MURDOCK PARLOR GRATE COMPANY *vs.* COMMONWEALTH.

Suffolk.   March 12, 1890. — June 21, 1890.

Present: FIELD, DEVENS, W. ALLEN, HOLMES, & KNOWLTON, JJ.

*Claim against Commonwealth — Misfeasance — Negligence —*
*Jurisdiction of Superior Court.*

The jurisdiction given to the Superior Court by the St. of 1887, c. 246, of "all claims against the Commonwealth, whether at law or in equity," does not extend to a claim for damages resulting from the misfeasance or negligence of its officers and agents in performing their duties.

PETITION to the Superior Court, under the St. of 1887, c. 246,* for damages occasioned to the petitioner from the alleged negligence of the respondent Commonwealth, its officers and agents. Trial in the Superior Court, before *Barker*, J., who found for the petitioner, and reported the case for the determination of this court, in substance as follows.

The petitioner was the lessee of a room in the Ticknor Building, in Boston, occupied by it for the sale of goods; and the respondent was the lessee of another room in the same building, situated directly over that of the petitioner, and occupied by its agent, the Bureau of Statistics of Labor. This bureau had had cases erected in this room for the storage of documents, collectively of very great weight, which early in November, 1887, caused the floor to settle, and the plastering upon the ceiling of the petitioner's room below to break and fall, resulting in an interruption of its business and damage to its goods. The bureau, although notified, refused to proceed to prevent the settling of the floor, or to stay it up, and the petitioner, for a rea-

---

* This statute, entitled "An Act concerning the collection of claims against the Commonwealth," is as follows: "The Superior Court shall have jurisdiction of all claims against the Commonwealth, whether at law or in equity, except those mentioned in section seven of chapter one hundred and ninety-five of the Public Statutes, and all claims shall be subject to the same set-off and recoupment as they would be if the Commonwealth was a private person, and shall be enforced in accordance with the provisions of chapter one hundred and ninety-five of the Public Statutes."

sonable amount, raised the floor to its original position, and stayed it up properly and securely.

The respondent requested the judge to rule that, upon the above facts, the petition could not be maintained; but the judge refused so to rule, and found that the floor of the respondent's room was unreasonably overloaded, and found for the petitioner, and assessed its damages in the sum claimed by it, with interest. If the finding was correct, judgment was to be entered thereon for the petitioner; otherwise, such judgment was to be entered as the law might require.

*H. C. Bliss,* First Assistant Attorney General, for the Commonwealth.

*F. D. Ely,* for the petitioner, submitted the case on a brief.

DEVENS, J. The question presented by the report in the case at bar is, whether, on a petition brought by the petitioner in the Superior Court, the Commonwealth is responsible, under the Pub. Sts. c. 195, as enlarged by the St. of 1887, c. 246, for a tort committed by its servants, by negligent management and by overloading the floor of an apartment which had been hired by the Commonwealth, by which injury was done to another tenant who was in occupation of another apartment in the same building.

The Commonwealth can be sued in its own courts, undoubtedly, where clear statutory authority for that purpose has been given by the Legislature, but in view of its sovereignty the intent to confer such authority should be clearly manifested. *Troy & Greenfield Railroad* v. *Commonwealth,* 127 Mass. 43. It may be assumed that the facts reported would constitute ground for an action of tort against a natural person, had a similar injury been done by his servants. The contention of the respondent is, that the statutes cited have not in such a case made the Commonwealth liable in this proceeding. It was held in *Wesson* v. *Commonwealth,* 144 Mass. 60, that the jurisdiction given to the Superior Court by the Pub. Sts. c. 195, § 1, of "all claims against the Commonwealth which are founded on contract for the payment of money," did not extend to a claim for damages for a breach of a contract. It was further held in *Milford* v. *Commonwealth,* 144 Mass. 64, that such jurisdiction did not extend to the obligation imposed upon the Commonwealth by the Pub.

Sts. c. 86, § 26, to reimburse the expense incurred by a town in the support of a State pauper. By these decisions the interpretation of the statute remedy was confined to actual contracts for the payment of money.

Subsequently to these decisions, the St. of 1887, c. 246, was passed, which gave to the Superior Court "jurisdiction of all claims against the Commonwealth, whether at law or in equity," with an exception not necessary to be considered. In effect, although not in terms, the Pub. Sts. c. 195, § 1, was amended by striking out the words "which are founded on contract for the payment of money," and in lieu thereof inserting the words, "whether at law or in equity." The title of the amendatory act is "An Act concerning the collection of claims against the Commonwealth," and it provides that "all claims shall be subject to the same set-off and recoupment as they would be if the Commonwealth was a private person." While the words "all claims" may, in their colloquial use, include a demand for damages occasioned by a tort to person or property, in its more proper judicial sense it is a demand of some matter as of right made by one person upon another for some particular thing, or compensation therefor, or to do or to forbear to do something as a matter of duty. *Prigg* v. *Pennsylvania*, 16 Pet. 539, 615. In view of the fact that the statute was passed shortly after the decisions in *Wesson* v. *Commonwealth*, and *Milford* v. *Commonwealth, ubi supra*, it is reasonable to infer that its object was to extend the jurisdiction of the courts to claims which had not been included in the previous statute, such as those which had been considered in the cases referred to, but not necessarily to claims of a different and distinct character.

There are many obligations of the State not coming within the definitions of a contract, all of which definitions require a consent or agreement of the parties. Where a statute imposes an obligation which is enforced as if it arose *ex contractu*, there is not a contract, but the obligation arises *ex lege*. In *Milford* v. *Commonwealth*, the claim was of this class. The amended statute was intended to cover claims of this class not arising under contract: those of a breach of contract, such as the subject of the suit in *Wesson* v. *Commonwealth;* contracts other than those for the payment of money; and perhaps other claims not con-

venient now to enumerate.   This gives to the statute a full and sufficient meaning, without holding, as the petitioner urges, that a remedy in the nature of an action of tort against the Commonwealth is afforded thereby for neglect or misfeasance of its officers or servants while engaged in the performance of their duties. The object of the statute cannot have been to create a new class of claims for which a sovereignty has never been held responsible, and to impose a liability therefor, but to provide a convenient tribunal for the determination of claims of the character which civilized governments have always recognized, although the satisfaction of them has been usually sought by direct appeal to the sovereign, or, in our system of government, through the Legislature.   It is therefore to be considered whether a demand or claim for an injury done, or tort committed, by a public servant in the performance of his duty, is one for which a liability has been held to be incurred by governments, even if there existed no tribunal competent judicially to pass upon it.

States have always found it necessary to take and use the property of their citizens for the purposes of their government; they have assumed various responsibilities on behalf of their citizens or others; they have also always been parties to contracts for the borrowing of money, the purchase of property, and the employment of labor; and the duties arising from such acts have always been fully recognized, even if judicial tribunals have not always been provided to make proper compensation for, or adjustment or payment of, the demands arising from such acts.   But we do not find that demands founded on the neglect or torts of ministerial officers, engaged as servants in the performance of duties which the State as a sovereign has undertaken to perform, have ever been held to render it liable. Nor does this rest upon the narrow ground that there are no means by which such obligations can be enforced, but on the larger ground that no obligations arise therefrom.   Municipalities, such as cities and towns, are created by the Commonwealth in order that it may exercise through them a part of its powers of sovereignty.   Where they are engaged in the performance of public duties imposed upon them by statute, they are not liable to private actions of tort for the negligence of their agents employed for this purpose, unless such action is pro-

vided by the statute. *Hill* v. *Boston*, 122 Mass. 344. *Curran* v. *Boston*, 151 Mass. 505.

If the Legislature had intended to create such an obligation, and voluntarily to assume in the administration of the State all the responsibility which an individual must incur in his private business, it certainly would have done so in express terms. An intent so to do, as it is in violation of the ordinary principles by which the administration of less important bodies is ordinarily regulated, would not have been left to inference, but would have been explicitly stated. "No government," says Mr. Justice Miller, "has ever held itself liable to individuals for the misfeasance, laches, or unauthorized exercise of power by its officers and agents." *Gibbons* v. *United States*, 8 Wall. 269. "The government," says Mr. Justice Story, "does not undertake to guarantee to any persons the fidelity of any of the officers or agents whom it employs; since that would involve it, in all its operations, in endless embarrassments, and difficulties, and losses, which would be subversive of the public interests." Story on Agency, (9th ed.) § 319. The cases of *United States* v. *Kirkpatrick*, 9 Wheat. 720, and *Dox* v. *Postmaster General*, 1 Pet. 318, cited in *Gibbons* v. *United States*, establish the principle, that, even in regard to matters connected with the cause of action, the government is not responsible for the laches, however gross, of its officers. In the cases thus cited, it would seem that no question of jurisdiction could have intervened to disturb the inquiry, as the government was the plaintiff, and the defendant was entitled to set off certain claims.

The petitioner urges that this legislation, as construed by him, is not novel, and that this is not the first statute by which a State has allowed itself to be impleaded in actions of tort. But the statute of New York of 1870, c. 321, § 1, and cases cited by him, fortify the position that the assumption of a liability so unusual could not have been left to inference. It was held in *Lewis* v. *State*, 96 N. Y. 71, that no principle of law, nor any adjudged case, would make the State liable "for the negligence or misfeasance of its agents, in like manner as a natural person is responsible for the acts of his servants," unless the State by its Legislature had voluntarily assumed it. The cases of *Bowen* v. *State*, 108 N. Y. 166, and *Splittorf* v. *State*, 108 N. Y. 205, are to

the same point.   In *Sipple* v. *State*, 99 N. Y. 284, where the Board of Canal Claims had, by the terms of the statute of New York, jurisdiction of claims for damages for injuries in the management of the canals such as the plaintiff had sustained, Chief Judge Ruger remarks: " It must be conceded that the State can be made liable for injuries arising from the negligence of its agents or servants, only by force of some positive statute assuming such liability."   In the case there considered, the Legislature, which in certain events made the State liable for injuries to an individual, was connected with its administration of the canals of the State, which was an enterprise managed by it as a State, and controlled by its own servants, from which a revenue was intended to be derived, as well as a public benefit received, and it was deemed proper, therefore, to incur the same responsibilities as those of private individuals.   We have been referred to no legislation by which a State, in the performance of its purely public duties in administering its government, has undertaken to incur responsibility for the negligence or misfeasance of its servants engaged in such administration.   Such legislation would be in contravention of what has usually been deemed the rule of public policy.

The statute we are discussing discloses no intention to create against the State a new and heretofore unrecognized class of liabilities, but only an intention to provide a judicial tribunal where well recognized existing liabilities can be adjudicated.

Where wrongs are done to individuals by those who are the servants of the government, those injured are not remediless, as such persons may be sued as may other citizens for the torts which they commit.   There may be cases also where it would be entirely just that a remedy should be extended by the public to an individual for the injury he had sustained by the negligence of a public servant; but cases of this character the Legislature yet reserves for its own determination.

*Petition dismissed.*