CHILTON CLUB *vs.* COMMONWEALTH
(and four companion cases [1]).

Suffolk.     October 7, 1948. — January 3, 1949.

Present: QUA, C.J., LUMMUS, DOLAN, WILKINS, & WILLIAMS, JJ.

*Taxation,* Meals tax, Invalid tax. *Commonwealth,* Proceeding against Commonwealth. *Jurisdiction,* Proceeding against Commonwealth.

Claims of certain clubs against the Commonwealth for reimbursement of meals taxes paid upon the filing of proper returns but under protest and "under duress to avoid imposition of penalties," and adjudged by this court in the decision reported in *Commissioner of Corporations & Taxation* v. *Chilton Club,* 318 Mass. 285, to have been illegally exacted under G. L. (Ter. Ed.) c. 64B, as originally enacted by St. 1941, c. 729, § 17, were enforceable under G. L. (Ter. Ed.) c. 258; it was not "otherwise expressly provided" by either § 7 of c. 64B, as originally enacted, or § 27 of G. L. (Ter. Ed.) c. 58, as amended.

PETITIONS, filed in the Superior Court on March 1, March 23, March 28, and April 9, 1946, respectively.

The cases were heard without a jury by *Baker,* J.

*R. W. Cutler, Jr.,* Assistant Attorney General, for the Commonwealth.

*R. Wait,* for the petitioners Chilton Club, The Country Club, and Women's City Club of Boston.

---

[1] The companion cases are those of The Country Club, Women's City Club of Boston, Wollaston Golf Club, and Oakley Country Club — all against the Commonwealth.

*R. L. Mapplebeck,* for the petitioner Oakley Country Club.

*F. R. Walsh,* for the petitioner Wollaston Golf Club, submitted a brief.

QUA, C.J.    These five cases are all petitions by incorporated private clubs to enforce against the Commonwealth, under G. L. (Ter. Ed.) c. 258, their respective claims to be reimbursed for meals taxes paid by them on the claim of the commissioner of corporations and taxation at a time when G. L. (Ter. Ed.) c. 64B, inserted by St. 1941, c. 729, § 17, imposing an excise upon meals served to the public, did not apply to meals served in such clubs. *Commissioner of Corporations & Taxation* v. *Chilton Club,* 318 Mass. 285. See now St. 1945, c. 663; St. 1946, c. 326; and St. 1946, c. 564. The question is whether claims of this kind can be enforced under c. 258.

The cases were heard upon a single "agreed statement of facts," which amounts to a case stated as to each case.   In each case there was a finding for the petitioner for so much of its claim as was not barred by the three year limitation prescribed by G. L. (Ter. Ed.) c. 260, § 3A, as inserted by St. 1943, c. 566, § 1.   See G. L. (Ter. Ed.) c. 258, § 5, which was repealed by St. 1943, c. 566, § 2.   The Commonwealth appeals.

The decisive facts established by the case stated are these. The claims of the commissioner for payment of the taxes in question were made "under color of" c. 64B, "but in fact without warrant of law as subsequently determined in *Commissioner of Corporations & Taxation* v. *Chilton Club,* 318 Mass. 285, on May 15, 1945." Each of the petitioners operated a dining room or restaurant in which only its members and their guests were permitted to obtain food or refreshment. The accommodations were not open to the public, and meals were not served as commercial enterprises. Each club applied for registration pursuant to c. 64B "solely for the purpose of preventing the imposition of penalties and reserving all rights to contend that it was not subject to the provisions of said chapter." Each filed monthly returns and made monthly payments to the commissioner under protest for periods beginning in February,

1942, and ending at various times, the latest payment (in the case of Women's City Club of Boston) being on May 2, 1945. "According to the law as determined by the Supreme Judicial Court on May 15, 1945, in the aforesaid case of *Commissioner of Corporations & Taxation* v. *Chilton Club,* the petitioners were not 'taxpayers' within the definition of G. L. (Ter. Ed.) c. 64B and were not liable to payment of said sums by reason of the provisions of said chapter as it then existed. The aforesaid payments were exacted without warrant and were paid under duress to avoid imposition of penalties."

General Laws (Ter. Ed.) c. 258 contains the provisions of statute law by which the Commonwealth in general waives its sovereign immunity to law suits and in the interest of justice to its citizens consents that claims against it "of the character which civilized governments have always recognized" (*Murdock Parlor Grate Co.* v. *Commonwealth,* 152 Mass. 28, 31) be determined in its own courts by the same tests to which it forces its citizens to submit in the determination of their claims against each other. *Nash* v. *Commonwealth,* 174 Mass. 335, 339. The first sentence of § 1 of the chapter reads, "The superior court, except as otherwise expressly provided, shall have jurisdiction of all claims at law or in equity against the commonwealth." Although it is held that the word "claims" does not include a claim for negligence or misfeasance of servants of the State engaged in purely public duties of administering its government (*Murdock Parlor Grate Co.* v. *Commonwealth,* 152 Mass. 28), yet the breadth of the language quoted indicates an intent to waive sovereign immunity with respect to other classes of claims generally recognized by governments, "except as otherwise expressly provided." *Charles I. Hosmer, Inc.* v. *Commonwealth,* 302 Mass. 495, 498. A claim for reimbursement of money exacted by the State without warrant of law and paid under protest and under duress to avoid the unlawful imposition of penalties, at least where the money actually goes into the treasury of the State and enriches the State wrongfully at the expense of the person paying, would seem to be a claim which any civilized State ought to recog-

nize and would recognize and satisfy in some manner. Such a claim is in the nature of a claim for money had and received. Recovery is allowed upon similar claims against municipalities. *Preston* v. *Boston,* 12 Pick. 7. *Boston & Sandwich Glass Co.* v. *Boston,* 4 Met. 181. *Lincoln* v. *Worcester,* 8 Cush. 55. *Kirchner* v. *Pittsfield,* 312 Mass. 342. See G. L. (Ter. Ed.) c. 60, § 98. When the Commonwealth waived its sovereign immunity and in sweeping terms submitted itself to suit, the natural inference would be that it intended to submit itself to the same liability to refund taxes unlawfully exacted to which its subdivisions had previously been subject, "except as otherwise expressly provided." Claims resting upon analogous types of implied contracts have recently been entertained against the Commonwealth without question under c. 258. *Arthur A. Johnson Corp.* v. *Commonwealth,* 318 Mass. 88, 93. *Benjamin Foster Co.* v. *Commonwealth,* 318 Mass. 190, 192–193, 195, 201. And in *Glickman* v. *Commonwealth,* 244 Mass. 148, at page 150, the opinion strongly suggests that a claim against the Commonwealth upon an implied contract for use and occupation of land would have been allowed, if necessary facts had been proved. In *Atlantic Pharmacal Co.* v. *Commissioner of Corporations & Taxation,* 294 Mass. 485, at page 487, the question was suggested but not decided whether, in the event of no other remedy, an illegal excise tax paid under compulsion might be recovered back under c. 258. We are of opinion that this question should now be answered in the affirmative. The reason why c. 258 does not appear to have been used hitherto for this purpose would seem to be that, leaving out of consideration for the moment the statute imposing the meals tax, nearly all, if not all, taxing statutes whereby the Commonwealth collects revenue have contained within themselves express provisions for the recovery back of taxes unlawfully exacted,[1] so that in all those instances

---

[1] See G. L. (Ter. Ed.) c. 60A, § 2, as amended by St. 1938, c. 480, § 2, and by St. 1939, c. 366, § 4 (motor vehicle excise tax); c. 62, § 46 (income tax); c. 63, §§ 18A, 28, as amended, 36, 51, 60, 71, as amended (corporation taxes); c. 63A, § 5, inserted by St. 1947, c. 632, § 1 (alcoholic beverage tax); c. 64, § 6 (stock transfer tax); c. 64A, § 5, as appearing in St. 1943, c. 420, § 2 (gasoline tax); c. 64C, § 24, inserted by St. 1945, c. 547, § 1 (cigarette tax); c. 65, § 27 (legacy tax); c. 65A, § 4 (taxes on transfers of estates).

it is "otherwise expressly provided." The existence of these provisions is the strongest evidence that this Commonwealth recognizes the justice of claims against it of this character and is willing to satisfy them.

The Attorney General contends that it was "otherwise expressly provided" in relation to the meals tax and points to c. 64B, § 7. That section, as originally enacted by St. 1941, c. 729, § 17, and as construed in *Commissioner of Corporations & Taxation* v. *City Club Corp.* 318 Mass. 293, did afford means by which an abatement could be secured of which the petitioner Chilton Club eventually availed itself, as appears in *Commissioner of Corporations & Taxation* v. *Chilton Club*, 318 Mass. 285. But § 7 contained no provision for any refund of taxes paid until after it had been rewritten by St. 1946, c. 564, too late to be of any assistance to the petitioners with respect to the payments here in question. Moreover, the original § 7, by its terms, applied only if the taxpayer had failed to file a return or had filed an incorrect or insufficient return. The appeal provided for was only from the commissioner's notice of delinquency in the matter of returns. *Commissioner of Corporations & Taxation* v. *City Club Corp.* 318 Mass. 293. There was in fact no such delinquency in these cases and no determination of such delinquency, and consequently there could have been no appeal. In order to appeal the petitioners would have been obliged to withhold returns or to file incorrect or insufficient returns. Section 7 as it then stood contained no provision by which the petitioners could file correct returns, pay the taxes so as to avoid the penalties, and then recover the taxes paid, nor any provision for the recovery back of taxes "exacted without warrant" and "paid under duress to avoid imposition of penalties." The penalties were severe. They not only included interest at either six or twelve per cent (c. 64B, § 6) but might also include a forfeit of $5 for each day of delay in filing returns and criminal penalties for false returns (§§ 8, 9).

The Attorney General also contends that it was "otherwise expressly provided" by G. L. (Ter. Ed.) c. 58, § 27. That section, as amended by St. 1943, c. 521, § 1, is of a

general nature providing that if it shall appear that certain enumerated taxes and excises, now including "an excise upon charges for meals," were illegally assessed, excessive, or unwarranted, the commissioner may, with the approval of the Attorney General, issue a certificate that the party aggrieved is entitled to an abatement, and that if the tax or excise has been paid, the State Treasurer shall pay the amount certified without any appropriation therefor. It has been held that c. 58, § 27, is not wholly discretionary; that it is the duty of the commissioner to consider an application under that section and to determine whether or not it appears to him that the tax was illegally assessed, excessive, or unwarranted; and that he can be compelled to perform that duty by writ of mandamus. *Attleboro Trust Co.* v. *Commissioner of Corporations & Taxation,* 257 Mass. 43. But it has also been held that after he has considered the application in good faith he cannot be compelled to exercise his judgment in a particular way. *Boston Safe Deposit & Trust Co.* v. *Commissioner of Corporations & Taxation,* 273 Mass. 212. Whether he could exercise his judgment contrary to a decision of this court in a precisely similar case has not been determined. It has been said, however, in substance, that c. 58, § 27, was enacted to afford a simple means for abatement and refund in cases where error or illegality is conceded, and not to compel the commissioner to act against his own honest opinion. *Boston Safe Deposit & Trust Co.* v. *Commissioner of Corporations & Taxation,* 273 Mass. 212, 213–215. This is scarcely the kind of statute to which an aggrieved taxpayer ought to be required to resort as his sole means of relief. In fact the last sentence of § 27 reads, "This section shall be in addition to and not in modification of any other remedies." There was no reference to the meals tax in this section until one was inserted by St. 1943, c. 521, § 1. Some of the taxes for which recovery is sought were paid before and some after that act took effect. When the meals tax was first enacted no argument could have been made that recovery in cases like these could not be had under c. 258 because it was "otherwise expressly provided" by c. 58, § 27. And

when reference to the meals tax was inserted in § 27 the provision was in that section that it should be "in addition to and not in modification of any other remedies." In view of all the circumstances we do not believe it was intended that a remedy under c. 258 should be defeated because it was "otherwise expressly provided" by c. 58, § 27, especially when the latter section itself stated that it should be "in addition to and not in modification of any other remedies."

Other than the two sections which we have just discussed at length no statute has been pointed out to us, and we have found none, which ought to bar relief in these cases under c. 258 because it is "otherwise expressly provided."

This decision rests upon the peculiar facts in these cases and upon the absence from the statute relating to meals taxes, as applicable to the payments in question, of the provisions almost invariably found in other taxing statutes for reimbursement of taxes wrongfully exacted. We do not imply that c. 258 is generally available for the recovery of taxes wrongly assessed and paid. See *Attorney General v. East Boston Co.* 222 Mass. 450. And we do not pass upon the effect of the change wrought in c. 64B, § 7, by St. 1946, c. 564.

None of the petitioners is in a position to claim more than the sum allowed it in the Superior Court. This is true both because of the terms of the case stated and because none of the petitioners has appealed. *Shepard* v. *Lawrence,* 141 Mass. 479, 481. *Greenaway's Case,* 319 Mass. 121, 122. *Flower* v. *Billerica,* 320 Mass. 193, 196.

> *Decisions are to be entered for the petitioners, severally, according to the findings of the Superior Court.*