R. Zoppo Co., Inc. *vs.* Commonwealth.

Suffolk. October 4, 1967. — December 12, 1967.

Present: Wilkins, C.J., Spalding, Kirk, Spiegel, & Reardon, JJ.

*Contract,* Building contract, Performance and breach, Contract with Commonwealth. *Commonwealth,* Contracts.

Where a contract with the Commonwealth for the construction and installation of large sewer pipe having unique design features, requiring special manufacture, and having no salvage value if unused provided that quantities stated were only approximate, that the contractor should be paid at unit prices only for pipe "satisfactorily built into place," that the contractor should have no claim for damages or an-

---

ticipated profits on work "dispensed with" by the Commonwealth's engineer in alterations which he was empowered to make, that construction and delivery schedules must be approved by the engineer, that time was of the essence, and that the contractor should be subject to penalties for delay, and it appeared that, after manufacture of the pipe and its delivery to the job site pursuant to schedules previously approved by the engineer, certain conditions at the site led to a deletion of a portion of the pipe by the engineer for the benefit of the Commonwealth, which retained the deleted portion, it was held that, notwithstanding the alteration and payment provisions of the contract, the contractor was entitled to recover from the Commonwealth, with respect to the deleted portion, the costs of fabrication, handling and storage of the pipe and overhead and profit of the contractor and a subcontractor hired in connection with the project.

PETITION filed in the Superior Court on April 1, 1965.

The case was heard by *Ford*, J., on motions for judgment.

*John R. Murphy* for the petitioner.

*Robert C. Gerrard*, Deputy Assistant Attorney General, for the Commonwealth.

REARDON, J. This is a petition under G. L. c. 258 to recover for work and expense allegedly incurred by the petitioner during the performance of a contract with the Commonwealth acting through the Metropolitan District Commission (Commission). Both the petitioner and the respondent filed motions for judgment on undisputed facts in the pleadings and affidavits of counsel, each seeking entry of judgment in its favor[1] under G. L. c. 231, § 59. A Superior Court judge denied the petitioner's motion and allowed the respondent's motion. The petitioner appealed.

The contract provided for the construction of a sewer for the Deer Island sewage treatment plant in the city of Boston. It included certain deep marine trench excavation and provided in part for construction and installation of forty linear feet of sixty-inch precast reinforced concrete subaqueous pressure diffuser pipe between designated stations on the outfall sewer line. The petitioner subcontracted the construction of this pipe to the Perini Corporation (Perini).

---

[1] The petitioner's motion was for entry of judgment "in the sum of $4,483.19 with interest thereon." The principal sum covered the cost of the pipe and the subcontractor's handling and storage costs, overhead and profit, all at $4,075.63, plus ten per cent for the petitioner's overhead and profit, for a total of $4,483.19.

The diffuser pipe had unique design features and required the fabrication of special forms for its manufacture. To avoid unnecessary delay it was ordered on August 10, 1959, by Perini and it was received on September 28, 1961, according to an affidavit filed in support of the petitioner's motion for judgment. The affidavit further stated that in accordance with requirements in the prime contract Perini, through the petitioner, submitted to the Commission's engineer detailed drawings for the sixty-inch pipe with anticipated construction and delivery schedules, all of which were approved by the engineer. The deep marine trench excavation along the line of the pipe as required by the subcontract with Perini was completed.

After manufacture of the pipe and its delivery to the job site and payment in full for it by the subcontractor, certain tidal actions created a condition which in the opinion of the engineer necessitated the deletion of the final twenty-four linear feet of the pipe. The deleted pipe was subsequently transported by the petitioner to its storage yard in East Boston and later, at the direction of the engineer, to the Commission's storage area on Deer Island. In a letter from the engineer to the Commission dated May 1, 1963, he stated the cost of the contractor's claim for the twenty-four feet of sixty-inch pipe to be $4,075.63, and further averred that the work performed by the petitioner was extra to the prime contract and should be approved for payment as an extra work claim. The Commission approved the claim in that amount on May 2, 1963, but subsequently requested an opinion of the Attorney General "as to the proper method of payment" for the unused pipe. Acting on the advice of the Attorney General, the Commission thereafter refused payment to the petitioner. The opinion of the Attorney General referred to the advertisement for bids (which became a part of the contract) which indicated that the work to be done consisted of the construction of *approximately* 5,454 linear feet of outfall sewer, that quantities to be excavated were *approximate* only, that the work under certain items might be materially greater or less than indicated, and

that the contractor agreed that he would accept unit prices as full payment. Reference was also made to the prime contract provisions that the contractor should be paid only for pipe satisfactorily built into place in the completed work, and that if the engineer made any alterations in the work to be done "the Contractor shall have no claim for damages or for anticipated profits on the work that thus may be dispensed with." There was reference also to that article in the contract relative to payment for extra work, with the observation that selling unused pipe "can hardly be considered 'work.'" The claim presented by the petitioner is for the cost of the twenty-four linear feet of sixty-inch pipe, with additional storage costs and charges for the subcontractor's and the petitioner's overhead and profit allocable solely to the delivery of the pipe to the job site.

1. General Laws c. 258 contains the provisions of the statute law upon which the Commonwealth in general waives its sovereign immunity to lawsuits and consents that claims "'of the character which civilized governments have always recognized' (*Murdock Parlor Grate Co.* v. *Commonwealth*, 152 Mass. 28, 31) be determined in its own courts by the same tests to which it forces its citizens to submit in the determination of their claims against each other. *Nash* v. *Commonwealth*, 174 Mass. 335, 339." *Chilton Club* v. *Commonwealth*, 323 Mass. 543, 545. It has been settled that in general the law applicable to public contracts is the same as that applicable to private contracts. "If . . . [the United States] comes down from its position of sovereignty, and enters the domain of commerce, it submits itself to the same laws that govern individuals there." *Cooke* v. *United States*, 91 U. S. 389, 398. *Hollerbach* v. *United States*, 233 U. S. 165. *United States* v. *S. S. Claiborne*, 252 F. Supp. 897, 899 (S. D. Ala.). We approach decision of the matter raised by this petition with this in mind.

2. Under the provisions of the contract, an engineer was assigned to resolve all questions arising during its performance and, specifically, was empowered to make alterations either before or after the commencement of construction.

Not clear in the contract, however, was whether the parties contemplated that the Commonwealth would be liable for payment for work approved by the engineer and commenced before any item was deleted in whole or in part. The contract provisions relative to measurement for payment are not helpful on this question. In fact, they are irrelevant for in this instance the work of the petitioner became impossible solely due to the order of deletion issued by the engineer for the benefit of the Commonwealth.[2]

3. Based upon the foregoing, we view this contract as an agreement best interpreted under Restatement: Contracts, § 236. Section 236 (a) calls for an interpretation "which gives a reasonable, lawful and effective meaning to all manifestations of intention" as against an interpretation "which leaves a part of such manifestations unreasonable, unlawful or of no effect." Section 236 (d) provides additional guidance: "Where words or other manifestations of intention bear more than one reasonable meaning an interpretation is preferred which operates more strongly against the party from . . . [which] they proceed [the Commonwealth], unless their use by . . . [it] is prescribed by law."

4. We pause to consider certain aspects of this contract and the item, the non-payment for which produced this action. The diffuser pipe, as has been stated, possessed unusual design features and required specialized manufacture. It had no salvage value and the only possible user of it was the Commission. In the contract which the Commission presented to the petitioner it was provided that "[t]he time in which the various portions and the whole of this contract are to be performed and the work is to be completed is of the essence of this agreement." To comply with this commitment to have the diffuser pipe on the job when required, it was necessary that the contractor arrange for fabrication of the pipe at a period sufficiently far in advance

---

[2] "*Section 14 14 Measurement and Payment.* The quantities to be paid for under Items 14 to 22 inclusive shall be the number of linear feet of precast reinforced concrete subaqueous pressure pipe including diffuser sections together with all appurtenances satisfactorily built into place in the completed work . . . ."

of the time of its installation that construction might not in any way be impeded. Indeed, penalties for delay by the contractor were provided for in the contract. Nor were the efforts to prepare for performance solely within the discretion and control of the contractor. It was required to submit for approval before commencing work "drawings, schedules and written descriptions showing in reasonable detail" its plan of operation, methods and equipment to be used, and arrangement of materials and construction of structures to be built for its purposes. It was prohibited from incorporating material in the permanent construction until the engineer had indicated his approval of such drawings. The contractor's part performance of its obligations relative to the diffuser pipe constituted the greater part of the performance for which it was obligated on that item. That it was impossible for the contractor to perform fully in accordance with the contract was due to the deletion by the Commission upon discovery of the soil conditions existing at the site where this pipe was to be laid, which would have rendered it more expensive, but not impossible, to lay the pipe. In any event, such impossibility as existed was the creation of the Commission and not that of the contractor. Had the contract been broken by a deliberate and unexplained deletion of the work, the Commonwealth would have been liable for damages, including costs and earned profits to the date of the deletion. See *United States* v. *Behan*, 110 U. S. 338, 344. Worthy of mention is the long-standing policy of the United States government to incorporate in termination and alteration clauses provisions providing costs plus reasonable profits to the date of deletion or termination. See 41 U. S. C. c. 1, and regulations thereunder (C. F. R. Title 41, parts 1–7, 1–8); Act of June 15, 1917, c. 29, 40 Stat. 182; Act of July 1, 1917, c. 114, 40 Stat. 704, 720.

5. As we have indicated, performance by the contractor was prevented by the Commission in its own and the public interest. The petitioner may thus be excused from non-performance of the requirements for payment set out in the

specific payment clause. Williston, Contracts (2d ed.) § 1939. The payment provisions of the contract do not control the disposition of the contractor's claim. The payment and alteration provisions do not preclude clearly recovery for part performance rendered before the deletion by the engineer and after he had approved the commencement of the fabrication of the pipe under the terms of the contract. Since the performance rendered was the manufacture and delivery of the specially fabricated pipe which had no value to the petitioner in salvage terms, since time was of the essence in the contract, since the petitioner could have been compelled to render this performance had he failed to do so (*Dahlstrom Metallic Door Co.* v. *Evatt Constr. Co.* 256 Mass. 404, 414), and since the deletion of the work already commenced was purely for the benefit of the Commonwealth, more specific language than that appearing in the contract is to be required before we can hold that a forfeiture was intended. See *M. DeMatteo Constr. Co.* v. *Commonwealth*, 338 Mass. 568, 583. Compare *Benjamin Foster Co.* v. *Commonwealth*, 318 Mass. 190, a case which involved directions by the Commonwealth's engineer as to the method of performing future work under a contract, which directions were clearly anticipated by the parties in the contract.

We hold that this case is governed by *Albre Marble & Tile Co. Inc.* v. *John Bowen Co. Inc.* 338 Mass. 394, 399. There, as here, preliminary samples, shop drawings, and so forth, were prepared under a clause similar to that appearing in the contract we discuss. There, as here, the labor and materials for which action was brought were not actually wrought into the structure but the preparatory efforts of the contractor were under the supervision of the defendant. The *Albre* case refers with approval to the statement of Professor Williston: "It is enough that the defendant has actually received in part performance of the contract something for which when completed he had agreed to pay a price." Williston, Contracts (2d ed.) § 1976. In the *Albre* case the value of the work done could not be returned in specie, and we make reference to Restatement: Contracts, § 468 (1),

which provides: "Except where a contract clearly provides otherwise, a party thereto who has rendered part performance for which there is no defined return performance fixed by the contract, and who is discharged from the duty of further performance by the impossibility of rendering it, can get judgment for the value of the part performance rendered, unless it can be and is returned to him in specie within a reasonable time." In the light of the foregoing, and without further discussion, it appears just, having regard to all the circumstances of the case (see the *Albre* case, p. 399), that the petitioner here may recover for those expenditures which it made pursuant to the specific request of the Commission. In addition, because the deletion ordered by the engineer was made solely for the benefit of the Commonwealth, without any default by the petitioner, who at all times acted in good faith and in compliance with the contract, recovery should include a reasonable profit on the work completed.

6. In our view the petitioner is thus entitled to recover its costs representing fabrication, subcontractor's handling and storage costs, and a reasonable amount for subcontractor's overhead and profit, together with the petitioner's overhead and profit, on the item fabricated and furnished to the amount set forth in appendix A of the petition.

The orders of the judge are reversed. Judgment is to be entered for the petitioner in the sum of $4,483.19.

*So ordered.*