**MARY L. SWANSON, et al[1]**
**vs.**
**BANKERS LIFE**

**No. 284**

District Court, Plymouth, ss.
Appellate Division, Southern District
Trial Court of the
Commonwealth of Massachusetts

**June 11, 1982**

---

1. The other plaintiff is Arthur G. Swanson.

Francis J. Lynch, Esq., Counsel for plaintiff
Harris G. Gorab, Esq., Counsel for defendant

## DECISION AND ORDER

This cause came on to and was heard in the Appellate Division for the Southern District sitting at Orleans upon Report from the District Court Department, Brockton Division and it is found and decided that there was prejudicial error.

It is hereby

ORDERED: That the Clerk of the District Court Department, Brockton Division make the following entry in said case on the docket of said Court, namely: JUDGMENT IS TO BE ENTERED IN ACCORDANCE WITH THE OPINION ATTACHED.

Opinion filed herewith.

Date: June 11, 1982

Daniel H. Rider, Presiding Justice
Robert A. Welsh, Jr., Justice
Milton R. Silva, Justice
Patricia D. Minotti, Clerk

## OPINION

**Welsh, J.** This is a civil action sounding in contract for the recovery of benefits alleged to be due and payable under an accident and health policy issued by the defendant. It was further alleged that the defendant was guilty of unfair or deceptive acts or practices in violation of General Laws Chapter 93A, sec. 9 (as in effect prior to St. 1979, c. 406, sec. 1, approved July 20, 1979.) The complaint sought recovery of multiple damages and attorneys' fees, as well as damages for benefits allegedly due under the policy.

The answer admitted the issuance of a group accident and health policy by the defendant to the Teamsters United Paper

and Allied Workers Welfare Fund under which the plaintiff Arthur Swanson was covered as an insured employee and the plaintiff Mary Swanson was covered as an insured dependent. The answer alleged, however, that coverage under the policy terminated as to the plaintiff Arthur Swanson when he retired on August 31, 1977. The policy provided that an insured empoyee or dependent would continue to have coverage for one year following the year of termination of employment for medical conditions which existed prior to the termination of employment of the insured employee. Approximately nine months after Arthur Swanson retired, Mary Swanson incurred medical expenses for treatment of lung cancer. The defendant insurance company initially declined payment, contending that coverage had terminated when the insured employee retired. After further investigation, the company finally acknowledged its liability for the expenses incurred and forwarded checks totaling $6433.86 to the attorney for the plaintiff. The answer essentially takes the position that the defendant promptly settled with the insured upon its determination that the medical treatment which was rendered was for a condition which existed before the date of retirement of the insured employee. There was a counterclaim asserted which was dismissed. No appeal was taken to that action.

After a number of procedural skirmishes[2] none of which are now germane, the defendant moved for summary judgment based upon the pleadings, admissions of facts, and affidavits with a number of supporting documents consisting of some 27 exhibits. On the date the motion for summary judgment was heard, the court allowed a motion to add Arthur Swanson as a plaintiff. No request for report was filed with respect to the allowance of that motion. The single justice designated by the Appellate Division to establish the report found that although this material was neither stipulated to nor submitted as a statement of agreed facts, it was not controverted and no other evidence was offered by either party.[3] Defendant's counsel submitted a number of requests for findings and rulings in connection with the motion, upon which the trial judge took no action. These need not be set forth verbatim, for reasons which will be discussed in this opinion.

Prior to argument on the motion, with the agreement of counsel and the acquiescence of the judge, it was decided that the entire matter was to be determined on the basis of documentation submitted by the parties without oral testimony and that the court would entertain an "oral" motion for summary judgment by the plaintiff simultaneously, upon the condition that a written motion with a supporting memorandum would be forwarded to the judge at his residence, rather than the court. Although the docket fails to reflect this action, neither party seems to contest this. Plaintiff's counsel did furnish the court with a written motion as directed. We pause to observe that oral motions for summary judgment are not favored. **Sequoia Union High School District v. United States,** 245 F.2d 227 (9th Cir. 1957.) Yet in an appropriate case, the allowance of such motions have been upheld on appeal. **Tripp v. May,** 189 F.2d 198 (7th Cir. 1951.) However, the action of forwarding the motion as memorialized in writing in writing and supporting memoranda directly to the judge at his home without insuring proper docketing is a procedure not to be condoned. As will appear, this procedural anomaly does not in the present case rise to the level of prejudicial error.

2. Among these are defendant's motion to vacate plaintiff's motion to strike certain defendant's answers and motions to amend complaint.

3. Counsel for plaintiff takes issue with this finding and certain other portions of the report. His entitlement to do so is discussed **infra.**

The judge took the motion under advisement and after an unexplained delay of approximately nine months, the court filed the following memorandum on August 18, 1980:

"The court after hearing, finds, upon mutual motions for summary judgment, **facts agreed,** for the plaintiffs, Mary L. Swanson and Arthur G. Swanson and assesses · actual damages according to account annexed in the sum of $6433.46 and assesses damages under the provisions of Chapter 93a of General Laws, in the sum of $12,866.92 plus interest from 1/19/79, the date of demand plus their costs and reasonable attorney's fees in the amount of $6433.46 for a total of $19,300.38." (Emphasis added.)

A draft report, though seasonably filed, was not acted upon by the trial judge. On November 26, 1980, the defendant filed a petition to establish a report.[4] The petition came on for hearing on May 8, 1981 before a panel of this District of the Appellate Division and an order was entered designating a single justice to settle the report. Rule 64(e) Dist./Mun. Cts. R. Civ. P.; **Patterson v. Ciborowski,** 277 Mass. ·260, 263 (1931). The justice submitted the report as established on December 4, 1981.

We determine there was prejudicial error in awarding multiple damages and counsel fees to the plaintiff upon the count for unfair and deceptive acts or practices. We also determine that the defendant was entitled to summary judgment in its favor dismissing so much of the complaint as seeks multiple damages and attorney's fees. General Laws, Chapter 93A, sec. 9. The finding for the plaintiffs on the count for breach of contract for failure to pay benefits due is affirmed. Since it appears by stipulation that counsel for plaintiff has received and has in his possession proceeds totaling $6,433.86, the amount of benefits stipulated to be due under the policy, the defendant is to receive credit in that amount. The plaintiff is entitled to interest on $6,433.86 from March 24, 1979, the date the defendant received documentation showing the cause for treatment existed prior to termination of employment, until May 1, 1979, the date the proceeds were turned over to counsel for the plaintiffs. General Laws Chapter 231, sec. 6C.

1. Plaintiff-appellee attempts to raise the question whether the report as established by the · single justice in accordance with an order of designation by the Appellate Division so to do is a fair, accurate or adequate record of the proceedings in the trial court. This issue is not open for review as a matter of right for two reasons: (a) since the plaintiffs prevailed below and did not cross-appeal, they lack standing either to have a report established on the basis of their own draft report or to have material they deem pertinent included as a matter of right in the report ultimately established. Of course, the appellee had the right to participate in the hearings to settle or establish the report by making suggestions both as to substance and form. The trial judge settling the report or the single justice designated for the purpose should weigh these suggestions and may adopt, modify, or reject them in the exercise of sound judicial discretion; (b) the decision by the single justice designated to establish the report is final as to all matters ˉof fact relating to the report. **Patterson v. Ciborowski, supra,** at 266, and cases cited. Questions of law are reviewable initially by a ·panel of the Appellate Division and further appellate review may be obtained in the Supreme Judicial Court. **Id.** at 266. Practical necessity demands a clearly defined point of finality in the settlement of a record for appeals. Undoubtedly a significant

---

4. This action was taken presumably to avoid the consequence implicit in Rule 64 to the effect that inaction on the draft report might in certain circumstances result in forfeiture of the appeal. See, **Moy v. McCain,** Mass. App. Div. Adv. Sh. (1979) 227.

number of appeals having merit would be stymied by engrafting a requirement that the established report must be acceptable to all parties concerned.

2. Requests for rulings of law are unnecessary to the appellate review process in regard to summary judgment motions. See, **Federal Deposit Insurance Corp. v. Profile Lounges, Inc.,** Mass. App. Div. Adv. Sh. (1979) 15, 16. The office performed by requests for rulings is the separation of issues of fact and law in those cases in which the judge acts as finder of fact. **Hogan v. Coleman,** 326 Mass. 770, 772 (1951). In those situations where fact and law are already discrete, requests for rulings serve no purpose and may be ignored by the trial judge.[5] The general principle that failure to act upon requests for rulings constitute a denial of such requests is subject to a number of qualifications. For example, it has been held that the failure to act upon requests for rulings on the grounds of prolixity will not be deemed a constructive denial of said requests, if the appellate court determines that the number submitted was unreasonable. **Id,** at 772. Another example: Where the court allows a motion for dismissal at the close of plaintiff's evidence under Rule 41(b) (2), such action is the functional equivalent of a ruling that a finding for the defendant is required, thus rendering moot the failure to act upon plaintiff's requests for rulings. **Boston Gas Company v. Charm Construction, Inc.,** — Mass. App. Dec. —.[6] See, **Irving v. Bonjorno,** 327 Mass. 516, 518 (1951). A more precise formulation of the applicable rule of law is as follows: Failure to act upon pertinent requests for rulings of law by the trial judge will be deemed to constitute a denial of such requests only in those cases in which requests for rulings perform their proper function of separating questions of fact and law; where requests for rulings are unnecessary for that purpose, they need not be acted upon by the trial judge. Where issues of fact and law are discrete, failure or refusal to act upon requests for rulings will not be deemed a constructive denial of such requests and such requests need not be reviewed on appeal. The two-fold inquiry on appeals in summary judgment cases is as follows: (1) is there a genuine issue of material fact, and (2) if the record evinces no controverted issue of material fact, which party is entitled to judgment. For such appellate review, neither findings of fact nor conclusions of law by the trial judge are necessary. The failure by the judge to pass upon the requests for rulings submitted by the defendant does not constitute prejudicial error. The Supreme Judicial Court in **Rollins Environmental Services, Inc. v. Superior Court,** 368 Mass. 174, 179-180 (1975) expressed an inclination to be guided by federal case law interpreting the rules of civil procedure absent compelling reasons to the contrary or significant differences in content. The federal courts which have considered the issue are in accord with the result we reach, concluding that neither findings of fact nor conclusions of law are required of the trial court in acting upon a motion for summary judgment. **Lindsey v. Leavy,** 149 F. 2d 899 (9th. Cir. 1945), **cert. den.** 326 U. S. 783; **Prudential Ins. Co. v. Goldstein,** 43 F. Supp. 767 (D. C. N.Y. 1942); **Simpson Bros, Inc. v. District of Columbia,** 179 F.2d 430 (D.C. Cir. 1949). Findings and rulings upon requests for rulings will be disregarded on appeal even if physically incorporated in the record in those cases in which they are not properly part of the record. **Harrington v. Anderson,** 316 Mass. 187, 190-191 (1944).

---

5. For example, requests for rulings have no standing where a case is presented on a statement of agreed facts. **Associates Discount Corp. v. Gillineau,** 322 Mass 490, 491 (1948); **Antoun v. Commonwealth,** 303 Mass. 80, 81 (1939) Under the former practice requests for rulings were deemed not to have standing in reviewing the sustaining of a demurrer. **Everett v. Canton,** 303 Mass. 166, 167, 168 (1939).

6. Mass. App. Div. Adv. Sh. (1979) 286, 291-292.

3. The failure to docket plaintiffs' motion for summary judgment which was orally made and subsequently reduced to writing and sent to the trail judge is not, under the cirumstances, substantially prejudicial to the rights of the plaintiffs.[7] Rule 56(a)&(b), R. Civ. P., 365 Mass. 824, indicates that a motion for summary judgment may be made by **any** party with or without supporting affidavits. Rule 56(c) makes it clear that summary judgment, when appropriate, may be rendered against the moving party. Thus, even if the plaintiffs had not brought a motion for summary judgment, they were entitled nonetheless to argue that on the basis of the pleadings, affidavits and related materials submitted by the defendant in connection with its motion for summary judgment, the court should award summary judgment in favor of the plaintiffs. The plaintiffs as well as the defendant appear to have had a full opportunity to offer materials by way of affidavit or otherwise bearing upon the issue of which party, (if anyone), was entitled to summary judgment. Indeed, the plaintiffs in their brief characterize this cause as one which by virtue of the agreement of the parties had become a "paper case", wherein no oral testimony would be taken; one in which the writings submitted by the parties and supplemented by argument of counsel would be the sole basis of the court's decision. If any materials which the plaintiffs contend were germane were excluded by the judge from consideration, the plaintiffs had the obligation initially to request a report of such action in the trial court. Rule 64(a) Dist./Mun. Cts. R. Civ. P. At the very least, they now have the obligation to demonstrate in this court that the material excluded would either tend to establish that judgment should not be awarded the defendant or raise a genuine issue of material fact. We note parenthetically that the mere fact that both parties move for summary judgment does not, of itself, establish that there exists no genuine issue of material fact. **Walling v. Richmond Screw Anchor Company,** 154 F.2d 780 (2nd Cir. 1946),

cert. den., 328 U.S. 870; **Krug v. Santa Fe Pac. R.R. Co.,** 158 F.2d 317 (D.C. Cir. 1946). Under the more restricted summary judgment practice prevailing in this Commonwealth under General Laws, Chapter 231 sec. 59,[8] The Supreme Judicial Court sanctioned the practice of awarding judgment for the appealing party where there were cross-motions for immediate entry of judgment, where it appeared on review that on the undisputed facts the appellant was entitled to prevail. See, **Boston Plate & Window Glass Co. v. John Bowen Co., Inc.,** 335 Mass. 697 702 (1957); **R. Zoppo Co., Inc. v. Commonwealth,** 353 Mass. 401, 408 (1967). We perceive of no reason why a similar course should not be followed in cases under Rule 56 Mass. R. Civ. P.

4. We turn to the question of the standing of the plaintiffs to invoke the remedy provided in General Laws Chapter 93A, sec. 9. The defendant policy in question was issued by the defendant not to the plaintiffs but to the Trustees of Teamsters United Paper and Allied Workers Welfare Fund. The defendant contends that the plaintiffs did not participate in a consumer transaction and therefore lack standing under the holding in **Dodd v. Commercial Union Ins. Co.,** 373 Mass. 72 (1977). We think the defendant's reliance on the **Dodd** decision is misplaced. In **Dodd,** the Supreme Judicial Court concluded on the basis of statutory language which was then in effect,[9] that persons designated as additional insureds under an automobile liability policy were not "purchasers" within the meaning of the act. **Id.** P. 81.

---

7. In considering this question, we pass over the threshold issue whether the plaintiff had a duty to insure docketing and filing before presenting the written motion and memoranda to the judge, and whether failure to accomplish this should preclude him from raising the question on appeal.

8. Repealed by St. 1975, c. 377, §87.

9. G.L.C. 93A §9, as in effect prior to St. 1979, c. 406 §1.

Unlike the additional insureds in **Dodd**, the plaintiff Arthur Swanson contributed towards the payment of premiums through payroll deductions while an employee. The trustees of the fund transmitted the proceeds collected from Mr. Swanson and his employer to the defendant. In common parlance, Mr. Swanson paid for this insurance, at least in part. The fact that this was accomplished by the diversion of a portion of his earned remuneration to the trustees of the Union Fund who, in turn, transmitted the same to the defendant does not require the conclusion that the Plaintiff Arthur Swanson was not a "purchaser" within the purview of the statute. To hold otherwise would be an instance of the triumph of sterile formalism at the expense of the substantive rights of the parties and a reproach to the law. Clearly, Arthur Swanson was the true party in interest and not the trustees of the union employee benefit fund, whose interest in the outcome of this case was peripheral at best. We do not construe **Dodd** in such a way as to attempt to resurrect the outmoded and discredited concept of privity of contract, long since dethroned by a more empirical and pragmatic jurisprudence, under the aegis of a standing to sue requirement. While the holding in **Dodd** made sense in the light of the then relevant statutory language in excluding a stranger to a consumer transaction who contributed nothing, directly or indirectly, towards the purchase of the insurance, the present plaintiff Arthur Swanson is plainly not in this category.[10] Alternatively, if one is constrained to indulge a penchant for legal fictions in order to grant relief, then the trustee of the union, considered corporately, might be deemed the "agent" of the members of the union in paying the required premiums.

5. We find the defendant's contention that the demand letter was not legally sufficient to be without merit. Clearly, the relief sought was the payment of benefits due under the policy which the plaintiffs contended were wrongly denied. We hold that the letter expressed the plaintiffs' grievance with sufficient clarity to put the defendant on notice and fairly gave the defendant an opportunity to tender. We reject the implication that the letter had to set forth the legal theory or rationale for the plaintiffs' demand for relief. The specific act or practice (i.e. the failure to pay benefits) was sufficiently identified in the totality of circumstances. Compare, **Slaney v. Westwood Auto, Inc.,** 366 Mass. 688, 704-705 (1975); **Entrialgo v. Twin City Dodge, Inc.,** 368 Mass. 812, 813 (1975).

6. We reject the argument that the plaintiffs suffered no loss of money or property and consequently are not entitled to relief under General Laws Chapter 93A, sec. 9. As the defendant correctly points out, the purpose of the requirement that the plaintiff suffer a loss of money or property is to preclude vicarious suits by self-constituted attorneys-general when they happen upon an act or practice they deem to be deceptive or unfair. **Baldassari v. Public Finance Trust,** 369 Mass. 33, 45 (1975). The defendant argues that since the amount due under the policy was tendered after the commencement of this action the plaintiffs suffered no loss of money or property. This argument overlooks the fact that the deprivation of the money due under the policy from the time that benefits ought to have been paid until the time they were tendered necessarily implies the loss of money or property. This is the rationale for the award of interest on a sum of money wrongfully withheld. **Ratner v. Hill,** 270 Mass. 249, 253-254 (1930). Defendant's obligation was to make a reasonable tender of settlement within 30 days after notice of the demand letter, in order to avoid the Draconian consequences of General Laws, Chapter 93A, sec. 9. It does not lie

---

10. We need not determine whether Mary Swanson as an insured dependent would have standing independently of Arthur Swanson.

in the mouth of the defendant to espouse the view that tender of benefits at a later time was all that was required of it.

7. The decisive issue in this case is whether the delay on the part of the defendant in tendering the benefits which it ultimately agreed were due was in itself an unfair or deceptive act or practice. There is nothing in the record that suggests either bad faith in the withholding of the benefits or a pattern of conduct suggesting a deliberate or wanton dilatoriness in the processing of the claim. Compare: **Noyes v. Quincy Mutual Fire Ins. Co.** 7 Mass. App. Ct. 723, 726-727 (1979). The defendant owed a duty to the plaintiffs to act reasonably upon communications with respect to claims, to conduct a reasonable investigation as to the merits of the claim, and to effect a fair and equitable settlement of the claim. See, General Laws Chapter 176D, sec. 3(9). Assuming, **arguendo,** that the defendant might be found to have breached its duty by failing to pay this claim on the basis of inadequate investigation based upon all available information. (General Laws Chapter 176D, sec. 3 (9) (d) ) or by failing to provide promptly a reasonable explanation of the basis for the denial of the claim (General Laws Chapter 176D, sec. 3(9) (m) ), the violation must also be found to be a wilful or knowing one, or one in which the refusal to grant relief amounts to bad faith with reason to know that the practice was an unfair or deceptive act or practice. **Heller v. Silverbranch Construction Corp.,** 376 Mass. 621, 627 (1978).

The record is devoid of evidence which might support an inference of either a knowing violation of Chapter 93A or an attempt to withhold the relief sought from the plaintiffs in bad faith. The defendant disputed the claim based upon an honest but mistaken belief that it was not liable to the plaintiffs. When its liability became apparent, payment was promptly made. The missing element was the nexus, based upon reasonable medical certitude, between the treatment for which benefits were sought and the medical condition of the insured dependent before the termination of the insured employee's employment. Had the defendant's liability been indisputable from the beginning, refusal to honor the claim might well trigger the multiple damage and related provisions of Chapter 93A. The defendant's erroneous belief that it was not required to pay the claim for benefits does not constitute a prohibited practice under Chapter 93A. **Mechanics National Bank of Worcester v. Killeen,** 377 Mass. 100, 109-110 (1979). "Just as every lawful act is not thereby automatically free from scrutiny as to its unfairness under Chapter 93A (see **Schubach v. Household Fin. Corp.,** 375 Mass. 133, 137-138 (1978), so not every unlawful act is automatically an unfair (or deceptive) one under Gen. Laws Chap. 93A. **Id.**, at P. 109. It may be argued that with greater diligence or greater administrative efficiency the defendant might have sooner come to the realization that the plaintiffs' claim was a valid one. We do not in the circumstances regard any such failure of diligence or bureaucratic lethargy as rising to the level of an unfair or deceptive act or practice.

There lurks in the record an issue but peripherally alluded to in plaintiffs' brief. The issue, broadly stated, is whether or not the failure by the defendant's agents to communicate with plaintiffs' counsel after notice of such representation, instead of the continuation of direct communication with the plaintiffs for a time was either in itself or in combination with the other circumstances present an unfair act or practice. Since the reference to it in the brief does not rise to the level of appellate argument, we do not address it.

It is ordered that judgment for the plaintiffs on so much of the complaint as seeks multiple damages and attorney's fees for an alleged violation of General Laws Chapter 93A be vacated. A new judgment is to enter awarding the plaintiffs interest on Six thousand four hundred thirty-three and 86/100

($6,433.86) dollars from March 24, 1979 until May 1, 1979 at the applicable statutory rate[11], and dismissing the plaintiffs' claim for relief under General Laws Chapter 93A. Neither party is to have costs.

SO ORDERED

**Daniel H. Rider, P.J.**
**Robert A. Welsh, Jr., J.**
**Milton R. Silva, J.**

This certifies that this is the opinion of the Appellate Division in this cause.

**Patricia D. Minotti, Clerk**

---

11. G.L.C. 231, §6C, as in effect prior to St. 1980, c. 322, §§2, 3.