MASSACHUSETTS GENERAL HOSPITAL *vs.* COMMISSIONER OF
PUBLIC WELFARE
(and three companion cases).

Suffolk.    January 9, 1964. — February 6, 1964.

Present: WILKINS, C.J., CUTTER, KIRK, SPIEGEL, & REARDON, JJ.

*Public Welfare. Hospital. Equity Pleading and Practice,* Appeal, Decree. *Words,* "Ancillary services."

The medical care to which recipients of old age assistance under G. L. c. 118A, §§ 1–12, recipients of medical assistance for the aged under c. 118A, §§ 13–32, and recipients of disability assistance under c. 118D

---

are entitled includes special nursing services when medically necessary. [27]

In a certification by the commissioner of administration under G. L. c. 7, § 30K, of an "all-inclusive" rate to be paid to a hospital for services rendered to "public assistance patients," no impropriety on the part of the commissioner appeared in his excluding special nursing services from such rate; and decisions by the department of public welfare to the effect that special nursing services were ancillary services included in such rate and need not be paid for by the communities concerned to the hospital in addition to such rate were legally erroneous. [27–29]

In a proceeding under G. L. c. 30A, § 14, for review of a decision of the department of public welfare upholding a decision of a local board, a decree of the Superior Court containing rulings to the effect that the department's decision was legally erroneous and remanding the matter to the department for further action consistent with the rulings was decisive of the issues and was a final decree, an appeal from which brought the proceeding to this court. [29]

Upon appeal in a proceeding under G. L. c. 30A, § 14, from a final decree of the Superior Court containing rulings to the effect that a decision of the department of public welfare upholding a decision of a local board was legally erroneous and remanding the matter to the department for further action consistent with the rulings, this court, upon adjudging such rulings correct, ordered the decree modified so as to reverse the department's decision and to remand the matter to the department with directions to reverse the local board's decision and to take other appropriate action consistent with this court's opinion, and affirmed the decree as so modified. [29]

Four petitions for review filed in the Superior Court on November 7, 1962, and December 6, 1962.

The respondent appealed from decrees entered after hearing by *Sgarzi*, J.

*David Lee Turner,* Assistant Attorney General (*James C. Doyle* with him), for the respondent.

*Albert G. Tierney, Jr.,* for the petitioner.

Cutter, J. Four patients were furnished medical care during the year 1962 by the hospital under public medical care plans mentioned in the margin.[1] In each case special nursing services were required for the patient's proper

---

[1] Two patients were recipients of medical assistance for the aged. G. L. c. 118A, §§ 13–32. One patient received old age assistance. G. L. c. 118A, §§ 1–12. One patient received disability assistance. G. L. c. 118D. The statutes just cited have been administered, and, in part at least adopted or amended, to permit Massachusetts to receive the advantages of Federal grants. 42 U. S. C. §§ 301–306 (1958, and Supp. IV, 1962, medical assistance to the aged and old age assistance), and 42 U. S. C. §§ 1351–1355 (1958, and Supp. IV, 1962, disability assistance). See *Fenton* v. *Department of Pub. Welfare,* 344 Mass. 343, 345–346.

care.  Payment to the hospital for the special nursing in each instance was denied by the board of public welfare in the community responsible for the patient.  These denials were affirmed by the State department of public welfare on the basis of medical care plans of the department, which provide for a so called all inclusive per diem (AIPD) rate of reimbursement of hospitals.[2]

The department took the view that the special nursing services were an ancillary service included in the per diem rate established under G. L. c. 7, § 30K.  The hospital in each instance received the AIPD rate for each day that each patient was in the hospital, but claimed also to be entitled to reimbursement of its necessary expenditures for special nursing.

In the Superior Court, upon review under G. L. c. 30A, § 14 (1), the trial judge ruled that the department's decision was "founded upon error of law" and that the AIPD rate did not include special nursing services.  No question is now presented or argued concerning the medical necessity of providing special nursing services in each of these cases.  We must decide, however, whether reimbursement for such special nursing services is included in the AIPD rate.

---

[2] General Laws, c. 7, § 30K (as amended through St. 1961, c. 586), reads in part, "'The director of hospital costs and finances shall . . . from time to time . . . certify to the commissioner of administration . . . [A] the average all-inclusive per diem *charge* to the general public *for public ward accommodations or their equivalent,* the all-inclusive per diem *cost of care in such accommodations* and the all-inclusive per diem *cost of care for all patients* of each hospital . . . .  [B] In determining such all-inclusive charges and costs, charges for and costs of *ancillary services* shall be included. . . .  Each such hospital . . . shall file with the director . . . on request such data, statistics, schedules or information as he may reasonably require to enable him to determine such charges and costs . . . .  The director shall have the power to examine the books and accounts of any such hospital . . . .  [C] The director shall make his determination . . . in accordance with a uniform system of hospital accounting and cost analysis . . . .  The commissioner shall certify annually to each of the various departments . . . of the commonwealth purchasing care in such hospitals . . . or reimbursing cities or towns for such care purchased by them, such rates with respect to each such hospital . . . as will reflect [D] reasonable hospital *costs* or *charges made to the general public,* whichever is the lower. . . .  The various subdivisions of the commonwealth purchasing hospital care and receiving reimbursement therefor . . . from the commonwealth, shall pay the hospitals . . . for *such care at the rates so certified* . . .'" (emphasis supplied).  The capital letters in brackets have been inserted to assist in referring to the language following such letters.  Certain language of the section, not quoted above, has been revised by St. 1963, c. 439, § 1.

1.  Under G. L. c. 118A, § 1, fourth par. (as amended through St. 1961, c. 615), and under G. L. c. 118D, § 1 (as amended through St. 1961, c. 127, § 2), and § 4 (as amended through St. 1960, c. 659, § 1), recipients of old age assistance and of assistance to disabled persons, respectively, are entitled to "adequate medical" care or assistance.   By G. L. c. 118A, §§ 13–32, as amended, recipients are entitled to "medical assistance" (see §§ 14 and 18, as amended through St. 1960, c. 781, § 8) which in § 13 (also as amended through St. 1960, c. 781, § 8) is defined as including, among other things, "(1) inpatient hospital ward services . . . (4) physicians' services . . . [and] (6) nursing services."   No argument is made, or well could be made, that a recipient of any one of the three types of assistance is not entitled to receive special nursing services when such services are necessary to provide adequate medical care.

2.  The department's medical care plan, here applicable, is dated June 1, 1961, and is found in the department's so called State Letter 137, dated July 17, 1961, on p. 13.   Under the heading "nursing care," there is no mention whatsoever concerning special nursing services to an aid recipient in a hospital.   The somewhat generally expressed plan seems simply to assume, but without saying so, that the AIPD rate includes reimbursement for such services.

The department's State Letter 141, dated January 10, 1962, transmitted revised rate schedules for the medical care plan, which it states "represent all-inclusive in-patient care rendered including drugs and so-called extra services."   The AIPD rate listed for Massachusetts General Hospital was $35.92.   State Letter 141 appears to have been only a method of incorporating in the department's plan the "certification of all-inclusive per diem hospitalization rates applicable to public assistance patients," dated December 15, 1961, made under § 30K (see fn. 2, *supra*), by the then acting commissioner of administration.   In this certification, the AIPD rate listed for the Massachusetts General Hospital was $35.92, and it was stated, "The rates are effective for all care rendered to patients on and after January 1, 1962, and they represent all-inclusive in-patient care ren-

dered, including *most* so called extra services. Certain *unusual* ancillary items such as artificial appliances, eyeglasses and other materials taken home or primarily used after discharge from the hospital are excluded from the all-inclusive per diem. Professional services of optometrist, dentist, chiropodist, etc. provided to patients of [p]ublic [m]edical [i]nstitutions are excluded from the all-inclusive per diem. The rates *do not include* whole blood furnished or *special duty nursing services*" (emphasis supplied).

The department in effect argues that, in excluding "special nursing services" from the AIPD rate, the commissioner of administration disregarded the provision of § 30K (see fn. 2, *supra,* at point [B]) that, in determining "such all-inclusive charges and costs, charges for and costs of ancillary services shall be included." We think this position is untenable. The director of hospital costs and finances is directed by § 30K (see fn. 2, at point [A]) to certify certain costs and charges to the commissioner of administration. The statute defines these in very general terms. The director is required (see fn. 2, at point [C]) to act in accordance with a uniform system of hospital accounting, which does not appear in these records.[3] The commissioner of administration, upon receiving the director's certification, is entitled to follow general hospital custom or experience in determining what are to be regarded as "ancillary services" and he for good reason may treat certain items of expense not frequently encountered as not within the customary "hospital costs or charges made to the general public" for "public ward accommodations." (See fn. 2, at point [D]; see also point [A]). In any event, the commissioner has done so with respect to special nursing services and it is obvious that hospitals have relied upon his action. The

---

[3] The evidence before the department shows that these special nurses are obtained by the hospital from a nurses' registry and are paid in the first instance, both for ward patients and private patients, by the hospital. The hospital is then reimbursed by or on behalf of the patient. If no other source of reimbursement is available, the hospital must meet these charges from its general funds held for charitable purposes. These general funds come from investments, legacies, the United Fund, and the difference between expenses and charges to certain private patients.

records contain no evidence upon which it could be found that the action of the commissioner of administration was not justified, nor do they show that payments by the hospitals for special nursing services were taken into account in computing the AIPD rate.

The trial judge correctly ruled that there was error of law in the decisions of the department.[4] We hold that special nursing services need not be included as ancillary services within the AIPD rate.

Each final decree is to be modified to provide that the department's decision is reversed and that the case is remanded to the department with directions to reverse the decision of each local board and to take other appropriate action consistent with this opinion. As so modified each final decree is affirmed.

*So ordered.*

------

[4] Although the final decrees remanded the cases to the department for further action consistent with the judge's rulings, they were final decrees decisive of the issues. The cases were not remanded by decrees essentially interlocutory to correct procedural defects in the administrative proceedings or for the taking of further evidence on the issues appealed. Cf. *Marlborough Hosp.* v. *Commissioner of Pub. Welfare,* 346 Mass. 737. The appeals thus were properly before us.