RUTH SARGEANT & another[1] vs. COMMISSIONER OF
PUBLIC WELFARE.

Suffolk.    January 6, 1981. — June 30, 1981.

Present: HENNESSEY, C.J., BRAUCHER, WILKINS, LIACOS, & ABRAMS, JJ.

*Interest,* Claim against Department of Public Welfare, Medical assistance
benefits, Computation. *Public Welfare,* Medical assistance benefits,
Interest. *Practice, Civil,* Parties, Intervention.

A vendor of health care services purchased by the Department of Public
Welfare was entitled to recover interest from the Commonwealth on
overdue medical assistance payments. [813-816]
A recipient of medical assistance payments had standing to assert a claim
on behalf of a vendor of health care services for interest on overdue
payments. [816-818]
In an action by a recipient of medical assistance payments to recover in-
terest on overdue payments, there was no error in the allowance of a
motion to intervene by the provider of services to the recipient, even
though, at the time of the motion, the judge had already ruled that the
plaintiff was entitled to recover interest, where the complaint in in-
tervention raised no substantive issues which had not already been
raised, all the factual issues relevant to the intervener's claim had to be
resolved in the trial of the plaintiff's claim, the intervener had testified
at the trial and was subject to cross-examination on every factual issue,
and the intervener was a real party in interest, and where all of the
defendant's claimed defenses against the intervener could have been
raised at the plaintiff's trial or were without merit. [818-820]
The Commonwealth was not an indispensable party to an action against
the Commissioner of Public Welfare by which a recipient of medical
assistance payments sought to recover interest on overdue payments.
[820]
A provider of health care services to a recipient of medical assistance pay-
ments was entitled to recover interest on overdue payments from the
date of the first demand for such payments rather than from the date
of the taking of an administrative appeal. [820-823]

---

[1] Dolores Mixter, intervener.

CIVIL ACTION commenced in the Superior Court on July 17, 1975.

The case was heard by *Morse*, J.

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*Paul W. Johnson*, Assistant Attorney General, for the defendant.

*Ellice Fatoullah* of New York (*James A. Frieden* with her) for the plaintiffs.

LIACOS, J. The defendant Commissioner of Public Welfare (commissioner) appeals from a judgment of the Superior Court. The commissioner alleges error in the award to the plaintiffs Ruth Sargeant (plaintiff) and Dolores Mixter (intervener) of interest on overdue medical assistance benefits. The plaintiffs cross appeal from so much of the judgment as fails to award interest on payments for services provided prior to August 3, 1970, the date the plaintiff filed a written request for a fair hearing on the matter of the overdue payments. We ordered the case transferred to this court on our own motion for direct appellate review. We affirm the judgment of the Superior Court judge in so far as it awards interest to the plaintiffs. We reverse that judgment in so far as it fails to award the plaintiffs interest from November 23, 1966, the date of the first demand for payment by the intervener.

These are the events which gave rise to these appeals. As a result of a rare, chronic and progressive neurological disorder known as amyotrophic lateral sclerosis, the plaintiff has been paralyzed and bedridden for many years. In 1965 and 1966 the plaintiff, a medical assistance recipient, resided in a nursing home under the medical care of a physician and her own nurse, the intervener, a licensed registered nurse. As a condition of admission, the nursing home required the plaintiff to provide her own nurse.

In December, 1965, a social worker assigned the plaintiff's case, an employee of the Brookline department of

public welfare (department),[2] advised the plaintiff and the intervener that if the intervener would establish a private home for the plaintiff and provide her with care, the department would reimburse the intervener at the maximum payment rate allowable for care by a registered nurse. In addition to being medically necessary — the plaintiff required highly skilled care by a registered nurse for at least twelve hours a day, seven days a week — this arrangement would be less costly to the department than maintaining the plaintiff in the nursing home.

At the department's urging and with its approval, the intervener set up an apartment and, after several trial visits of varying duration, the plaintiff moved in permanently on November 10, 1966. From that time and during all relevant periods afterwards the intervener has provided the plaintiff skilled nursing care at least twelve hours a day, seven days a week.

From the outset, the department failed to make payments as 'promised. Between November 23, 1966, and July, 1970, the intervener made numerous demands by telephone and in person for payments. The intervener received repeated assurances that the payments would be forthcoming until February 1, 1967, when the department[3] repudiated its obligation to provide the plaintiff or intervener any benefits in excess of the plaintiff's $147.10 monthly disability check. Contrary to State regulations,[4] the department failed to in-

---

[2] By virtue of St. 1967, c. 658, effective July 1, 1968, the administration of the public welfare system was transferred from the municipalities to the Commonwealth. For a description of this shift see *Cambridge* v. *Commissioner of Pub. Welfare*, 357 Mass. 183 (1970). While the acts of welfare agencies prior to July 1, 1968, were those of local departments of public welfare (Brookline and Boston), we refer to local and State actions as those of the "department" as a matter of convenience. Cf. St. 1967, c. 658, § 80.

[3] By this time the local department involved was that of the city of Boston. The responsibility for providing benefits to the plaintiff had been transferred from the Brookline department to the Boston department on or about November 23, 1966, because the intervener had established a home for the plaintiff in Brighton.

[4] See Massachusetts Public Assistance Policy Manual, c. 6, § A, 1 (rev. July, 1968); *id.* at c. 6, § B, 1 (rev. November, 1969).

form the intervener or the plaintiff of their right to request a fair hearing.

The plaintiff filed fair hearing requests on August 7, 1970, February 20, 1971, and June 14, 1971. She was finally afforded a hearing in July, 1973. At the hearing the intervener represented the plaintiff as her authorized agent. The plaintiff was awarded benefit payments from the first appeal date, August 7, 1970, but denied any payments for the period prior to that date, back to November, 1966. Payments were approved at rates substantially lower than the department's established assistance rates for care by a registered nurse during the relevant time periods.[5] The plaintiff filed a petition for judicial review of the agency determination in the Superior Court pursuant to G. L. c. 30A, § 14 (this appeal was not heard until 1975).

Pursuant to the agency decision of 1973, the intervener received payments at the reduced rates until July 31, 1974, when, without explanation or notice, the payments were abruptly stopped. The plaintiff then requested a fair hearing to appeal the suspension of her medical assistance, and, upon an adverse administrative determination of that appeal, she filed a second petition for judicial review pursuant to G. L. c. 30A, § 14, to the Superior Court on January 1, 1975. On March 20, 1975, the plaintiff was adjudged by the Superior Court "eligible to receive Medical Assistance payment for skilled nursing care in her home, 12 hours per day, 7 days per week . . . ." This ruling established the plaintiff's right to prospective benefits.

In April, 1975, the plaintiff's appeal in the Superior Court from the 1973 fair hearing was remanded to the department for rehearing by a department referee. The department did not contest the plaintiff's version of the facts. Thus, in June, 1975, the plaintiff's request for pay-

---

[5] Assistance was approved at the following per diem rates: $12 (1970); $15 (1971); $18 (1972-1973); $20 (after July 1, 1973). The proper allowance should have been $34.50 (September, 1965); $45 (September, 1967); $52.50 (September, 1969, to September, 1972).

ments retroactive to November 23, 1966, in the amount of approximately $95,000 was approved by the department's appeals referee.[6] Once again the plaintiff appealed the agency decision on the ground that the fair hearing decision failed to rule on the plaintiff's claim for interest on the overdue payments and failed to find the subsidiary facts necessary to support the decision as required by the remand.

A judge of the Superior Court noted that "[a]fter years of bureaucratic fumbling and legal maneuvering in this Court, the department finally approved plaintiff's claim on June 19, 1975" and that "[i]t is plain that the department contracted for these services as of November 23, 1966." The judge thus ruled on May 10, 1979, that the plaintiff is entitled to interest from the date she first sought review to recover the overdue payments. The judge remanded the case to the department to determine the date the appeal was first initiated and the amount of interest due. He retained jurisdiction for the purpose of entering a final judgment. In May, 1979, the commissioner challenged the plaintiff's standing to seek interest payments on behalf of her nurse. On May 31, 1979, Miss Mixter moved to intervene as a plaintiff in the Superior Court proceeding. The motion was allowed on June 29, 1979. Judgment for the plaintiffs was entered on July 2, 1979, awarding the plaintiffs interest from August 3, 1970, in the amount of $27,941.42. It is from this judgment that the parties appeal.

1. *Contentions of the parties.* The commissioner challenges the award of interest to the plaintiffs on three grounds: (1) as a matter of substantive law neither the plaintiff nor the intervener is entitled to receive interest on the overdue medical assistance payments; or, in the alterna-

---

[6] The department did not make full payment until early 1977. Three partial payments were made as follows: $6,383.92 (February, 1973); $46,798.60 (February, 1976); $42,017.98 (January, 1977). It appears that the payment was made only as a result of a Federal suit against officials of the department who refused to order payment pursuant to the fair hearing decision of June 19, 1975. See *Sargeant v. Sharp,* 579 F.2d 645, 646 n.1 (1st Cir. 1978).

tive, if such interest is allowable, (2) the plaintiff, as a medical assistance recipient, has no standing to recover such interest on behalf of the intervener, her provider or vendor, and (3) the judge erred in allowing the intervener's petition to intervene.

The plaintiffs contend that the award of interest should run from the date of the first demand for payment or from the date of the department's repudiation of its obligation to pay for the intervener's services.

2. *Entitlement to interest.* We agree with the plaintiffs that this case is governed by our decision in *Massachusetts Gen. Hosp.* v. *Commissioner of Pub. Welfare,* 359 Mass. 206 (1971). In *Massachusetts Gen. Hosp.,* the plaintiff hospital was, like the intervener, a "vendor of services which the . . . department 'purchased' under the statute. . . . [The vendor] notified the . . . department . . . that it was furnishing care to a person receiving public assistance and received . . . authorization to do so. . . . In no instance [was] the . . . department's obligation to pay for the care in dispute." *Id.* at 208. Also similarly, the rate for the type of services provided was established and not in dispute. We held as follows: "[M]oney was owed by the . . . department to [the vendor] either on an actual or implied contract, or a statutory liability, which gave rise to a contractual relationship when [the vendor] rendered services with the . . . department's knowledge or approval, or in circumstances which bound it to pay for them. There was . . . a detention of money, beyond the reasonable time which the statutes requiring payment to [the vendor] fairly should be interpreted as contemplating. Eventually [the vendor] was forced to take an administrative appeal in order to collect the principal sum due. Such an unreasonable detention ordinarily gives rise to a liability for interest . . . in an appropriate proceeding by the creditor to recover the indebtedness." *Id.* at 209. Thus, we affirmed the trial judge's allowance of interest to the vendor.

The commissioner contends that this case is governed instead by our decision in *Broadhurst* v. *Director of the Div.*

*of Employment Security*, 373 Mass. 720 (1977), in which we rejected a plaintiff's claim for interest as compensation for delay in receiving unemployment benefits. In *Broadhurst* we observed as follows: "[T]he legislative silence as to interest in c. 151A [the Employment Security Law], which otherwise contains a rather detailed consideration of proceedings and remedy, indicates a legislative intent that interest not be payable on unemployment benefits. . . . Moreover, . . . [t]he Commonwealth can be impleaded only to the extent that it has expressed its consent. In waiving its 'immunity' under G. L. c. 151A, the Commonwealth established certain rights of recovery as to unemployment benefits 'which cannot be extended beyond those expressly conferred by statute'" (citations omitted). *Id.* at 727, quoting from *Gurley* v. *Commonwealth*, 363 Mass. 595, 600 (1973). Thus, the commissioner argues that the omission of any references to interest in the comprehensive statutory scheme found in G. L. c. 118E, § 22, and c. 18, § 16, regarding administrative appeals from a denial of medical assistance, precludes an award of interest in this case. However, unlike *Broadhurst*, the intervener in this case claims a remedy based on a contractual obligation of the Commonwealth. In a contract action, interest is allowed against the Commonwealth in the same manner and to the same extent that it would be allowed against a private person. See *Broadhurst, supra* at 727 (distinguishing contract claims from claims for statutory benefits); *C. & R. Constr. Co.* v. *Commonwealth*, 334 Mass. 232, 233-234 (1956); G. L. c. 258, § 12, replacing former G. L. c. 258, § 1 (abrogating the Commonwealth's sovereign immunity in contract actions).

The commissioner further argues that the holding of *Massachusetts Gen. Hosp.* was modified by G. L. c. 7, § 30N, inserted by St. 1968, c. 492, § 3 (repealed by St. 1973, c. 1229, § 4, and carried forward essentially unchanged as G. L. c. 6A, § 35), which provides in pertinent part: "Any provider of health care services which receives . . . payment from any governmental unit for general health . . . care . . .

shall, as a condition of the receipt of such . . . payment . . . accept . . . payment at the rates established by the [rate setting] commission . . . *as discharging in full any and all obligations* of an eligible person *and the governmental unit to pay . . . the provider* of health care services *in any way* for general health . . . care . . . provided" (emphasis added).[7]

We disagree. In order for the Massachusetts Medical Care and Assistance Program[8] to be eligible for Federal funding under the Federal Social Security Act,[9] the program, including the fee schedules, must comply with the Federal act and its implementing regulations. See 42 U.S.C. §§ 1396, 1396a. Cf. Governor's Executive Order 49 (January 31, 1966); G. L. c. 118E; St. 1969, c. 800, §§ 6, 10. We believe the provision relied upon by the Commonwealth was enacted to bring the Massachusetts plan into conformity with the Federal act and regulations. The 1968 enactment was entitled "An Act establishing the rate setting commission with authority for setting the rates to be paid by each governmental unit to providers of health services under medical assistance programs." In addition to the payment provisions relied upon by the commissioner, St. 1968, c. 492, requires as a condition for reimbursement that providers keep detailed records as the rate setting commission may require to perform its duties. Thus, the act combines the record-keeping and disclosure requirements of 42 U.S.C. § 1396a(a)(27),[10] with the payment provisions of

---

[7] Although G. L. c. 6, § 30N, was in effect at the time of our decision in *Massachusetts Gen. Hosp.* v. *Commissioner of Pub. Welfare*, 359 Mass. 206 (1971), that case involved medical care provided in years prior to the effective date of the statute.

[8] See G. L. c. 118E, §§ 1-27.

[9] Title XIX, entitled "Grants to States for Medical Assistance Programs" (sometimes referred to in Massachusetts as "Medicaid") was established by the Social Security Amendments of 1965. See Pub. L. No. 89-97, 79 Stat. 343 (1965); 42 U.S.C. § 1396 et seq.

[10] 42 U.S.C. § 1396a(a)(27), inserted by Pub. L. No. 90-248, 81 Stat. 906 (Jan. 2, 1968), provides:

A State plan for medical assistance must — "(27) provide for agreements with every person or institution providing services under

42 U.S.C. § 1396a(a)(30),[11] and anticipates the Federal regulation which clarifies the payment provisions.[12] General Laws c. 7, § 30N, is silent on the question whether interest is allowable in the event medical assistance payments are wrongfully withheld. In contrast, G. L. c. 231, § 6C, expressly provides for the payment of interest "[i]n all actions based on contractual obligation." The language relied upon by the commissioner was clearly designed to prevent providers from charging the assistance program excessive rates or from charging recipients rates in excess of their assistance benefits, and generally to keep down the costs of the federally-sponsored medical assistance programs. We view G. L. c. 7, § 30N, and its successor, G. L. c. 6A, § 35, as having no application to the question of interest.

3. *Standing.* The commissioner next contends that even if a contractual relationship as recognized in *Massachusetts Gen. Hosp.* did exist between the intervener, as vendor, and the department, the plaintiff lacks standing to collect in-

---

the State plan under which such person or institution agrees (A) to keep such records as are necessary fully to disclose the extent of the services provided to individuals receiving assistance under the State plan, and (B) to furnish the State agency with such information, regarding any payments claimed by such person or institution for providing services under the State plan, as the State agency may from time to time request."

[11] 42 U.S.C. § 1396a(a)(30), inserted by Pub. L. No. 90-248, 81 Stat. 911 (Jan. 2, 1968), provides:

A State plan for medical assistance must — "(30) provide such methods and procedures relating to the utilization of, and the payment for, care and services available under the plan as may be necessary to safeguard against unnecessary utilization of such care and services and to assure that payments (including payments for any drugs provided under the plan) are not in excess of reasonable charges consistent with efficiency, economy, and quality of care."

[12] Code of Federal Regulations, tit. 45, § 249.31 (effective January 29, 1969) provides in part: "A State plan for medical assistance . . . must provide that participation in the program will be limited to providers of service who accept, as payment in full, the amounts paid in accordance with the fee structure." This regulation was published for notice and comment in October, 1968. See 33 Fed. Reg. 14894 (1968).

terest under the contract because she is merely a third-party beneficiary of that contract. We disagree. The statutory scheme, which gave rise to the contractual relationship between the department and the intervener also gives rise to rights in the plaintiff, which confer standing upon her to assert her vendor's claim for interest.

General Laws c. 118E, § 22, confers standing to request an administrative hearing on "[a]ny person aggrieved by the failure of the department to grant medical assistance" or to act upon an application for such assistance. Similarly, G. L. c. 30A, § 14, confers standing to seek judicial review in the Superior Court on "any person . . . aggrieved by a final decision of any agency in an adjudicatory proceeding." The Federal Social Security Act provides: "A State plan for medical assistance must . . . provide that all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such *assistance shall be furnished with reasonable promptness to all eligible individuals*" (emphasis added). 42 U.S.C. § 1396a (a) (8). A State plan must also "provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied or is *not acted upon with reasonable promptness*" (emphasis added). 42 U.S.C. § 1396a (a) (3).

We have in the past recognized that the Massachusetts program confers an entitlement to medical assistance upon eligible individuals. See *Massachusetts Gen. Hosp.* v. *Commissioner of Pub. Welfare,* 347 Mass. 24, 27 (1964). We have also recognized the right of a medical assistance vendor to receive payment for services provided within a reasonable time. *Massachusetts Gen. Hosp.,* 359 Mass. at 209. The recipient's right to receive medical assistance promptly is inextricably bound up with the vendor's right to receive prompt payments. Indeed, under Federal and State law, medical assistance payments must be made directly to the vendor. See 42 U.S.C. § 1396a (a) (32); G. L. c. 118E, § 5. Nevertheless, it is the recipient of medical assistance who must depend upon reasonably prompt payment to insure

continued treatment. Clearly, the plaintiff is an aggrieved person within the meaning of G. L. c. 118E, § 22, and G. L. c. 30A, § 14.

Despite the requirement that the assistance benefits must be paid directly to the vendor, the commissioner apparently concedes, as he must, that the plaintiff has standing to bring an action for the principal of overdue assistance benefits. In view of the promptness requirements and the recipient's important interest in receiving uninterrupted assistance, we see no basis to draw a distinction between the recipient's right to seek recovery of overdue payments on the provider's behalf, and her right to seek interest on those payments on the provider's behalf. Indeed, the original petition for review brought by the plaintiff sought both payments due and interest on the overdue amounts. For standing purposes in this context, in which the overdue payments are for services already provided and the recipient must depend upon the provider for continued services, "[n]o significant distinction can be drawn between welfare recipients and welfare providers." *Massachusetts Gen. Hosp.* v. *Sargent,* 397 F. Supp. 1056, 1059 (D. Mass. 1975).

4. *Intervention.* Miss Mixter's motion to intervene was filed pursuant to rules 17 and 24 of the Massachusetts Rules of Civil Procedure and pursuant to G. L. c. 30A, § 14. The commissioner contends that the motion should not have been allowed because at the time of the motion the judge had already ruled that the plaintiff was entitled to recover interest. The commissioner claims he was prejudiced because, if given the opportunity, he would have asserted four legal defenses to the intervener's claim: (1) G. L. c. 7, § 30N, and its successor, G. L. c. 6A, § 35, preclude the intervener from recovering interest on overdue payments. (2) The Statute of Frauds is a bar to recovery of interest in the absence of a written contract with the department. (3) The running of the statute of limitations is a bar to recovery of any interest. (4) The intervener failed to exhaust her administrative remedy by seeking a fair hearing.

We disagree that the commissioner was prejudiced by Miss Mixter's intervention under Mass. R. Civ. P. 17 and 24. The Commissioner had an opportunity at trial to raise the first two legal defenses, based upon G. L. c. 7, § 30N, and the Statute of Frauds. The complaint in intervention closely parallels the plaintiff's complaint in the action. The complaint in intervention raised no substantive issues that had not been raised before. Moreover, all of the factual issues which were relevant to the intervener's claim had to be resolved in the trial of the plaintiff's claim. In addition, the intervener was present at the trial as the plaintiff's authorized agent. She testified and was subject to cross-examination on every material factual issue.

We have already determined the commissioner's argument based upon G. L. c. 7, § 30N, favorably to the plaintiffs. We conclude the Statute of Frauds is not applicable. The requirements for eligibility under the Medical Care and Assistance Program are controlled by Federal and State statutes and regulations. The contractual relationship between the department and the provider arises out of a statutory liability. See *Massachusetts Gen. Hosp.*, 359 Mass. at 209. The requisite statutory liability was proved and found in the administrative proceeding in this case and affirmed in the Superior Court. The Superior Court judge observed in his May 10, 1979, order: "It is plain that the department contracted for these services as of November 23, 1966." The department regulations in effect prior to June, 1977, expressly provided that an application for medical assistance "is any actual oral or written request for assistance . . . made by an individual or his representative." Massachusetts Public Assistance Policy Manual, c. 2, § A, 1 (rev. July, 1967). Contrast *id.* at c. 2, § A, 1 (rev. June, 1977) (providing only for written requests). See State Letter 425 (June 9, 1977), 63 Mass. Reg. 131, 132 (June 30, 1977) (deleting provision for oral request).

The statute of limitations is also not a bar to the intervener's claim. Under rule 17, the joinder of a party as the real party in interest "shall have the same effect as if the

action had been commenced in the name of the real party in interest." Mass. R. Civ. P. 17 (a), 365 Mass. 763 (1974). See *Wadsworth* v. *Boston Gas Co.*, 352 Mass. 86, 88-89 (1967). Cf. Mass. R. Civ. P. 24 (a) (2), 365 Mass. 769 (1974).

The doctrine of exhaustion of administrative remedies also would not apply to the intervener under the same provision of rule 17(a). Moreover, as stated above, the intervener actually was present and testified at the administrative hearing. All factual issues material to her claim were resolved in that hearing. Thus, the purposes underlying the exhaustion doctrine have been served. Finally, under G. L. c. 30A, § 14 (2), the reviewing judge in the Superior Court may in his or her discretion permit the intervention of "interested" persons not party to the administrative action. It is clear that the intervener is a real party in interest in this case. There was no error.

5. *Commonwealth as indispensable party.* The Commonwealth next contends on the basis of *Perkins School for the Blind* v. *Rate Setting Comm'n*, 10 Mass. App. Ct. 656 (1980), that the plaintiffs should have prosecuted this claim to interest through a contract action against the Commonwealth as an indispensable party. We disagree. Unlike the situation in *Perkins*, which involved a suit against the Rate Setting Commission, in this case, the defendant commissioner is provided authority to pay, prosecute, and defend monetary claims involving contractual liabilities arising out of the administration of the Medical Care and Assistance Program, and thus he is authorized to represent the interest of the Commonwealth in such claims. See, e.g., G. L. c. 118E, §§ 5, 6, 8, 14, 16, 20, 22. Contrast *Perkins School for the Blind* v. *Rate Setting Comm'n, post* 825 (1981).

6. *Time from which interest should run.* The plaintiffs appeal from the judge's allowance of interest from the date of the first taking of the administrative appeal (August 3, 1970), rather than from the date of the first demand for payments (November 23, 1966), or, in the alternative, from the date the department first repudiated the claim for payments (February 1, 1967).

In *Massachusetts Gen. Hosp.* we declared: "[A]n unreasonable detention [of money] ordinarily gives rise to a liability for interest, at least from the date of the writ (or other initiating document), in an appropriate proceeding by the creditor to recover the indebtedness. In these instances, an appropriate proceeding to establish the indebtedness was the request by [the provider] to the . . . department for administrative review. Even if [the provider] had made no prior demand for payment, it was entitled, under general principles for the allowance of interest, to recover interest (G. L. c. 107, § 3), at least from the date of seeking that review, *which constituted an unequivocal demand for payment of the amount owed*" (emphasis added). *Massachusetts Gen. Hosp.*, 359 Mass. at 209-210. In the absence of an appeal by the vendor in that case from the judge's allowance of interest from the date of the administrative appeal, we expressly left open the question whether a formal demand by the provider prior to seeking administrative review would require payment of interest from the date of demand. We now decide this question in the affirmative.

The general rule is that in the absence of a contract provision requiring interest, "simple interest at the statutory legal rate is recoverable as damages for non-payment of a liquidated debt from the date of breach." 5 A. Corbin, Contracts 280-281 (1964). Restatement of Contracts § 337 (a) (1932). 11 S. Williston, Contracts 620 (3d ed. 1968). See *Vaughan* v. *Lemoine*, 330 Mass. 83, 86-87 (1953). Cf. *Grozier* v. *Post Publishing Co.*, 342 Mass. 97, 105-107 (1961); *Cochrane* v. *Forbes*, 267 Mass. 417, 420 (1929); *Frazer* v. *Bigelow Carpet Co.*, 141 Mass. 126, 128 (1886). Where the relevant statute or regulations prescribe a timetable for payment, a breach would occur if a payment were made after the date so prescribed. In the instant case the breach occurred when the department failed to include payment for rendered nursing services in its monthly assistance check to the plaintiff. This date is not ascertained on the record, nor do the plaintiffs claim interest from this date. Rather, the plaintiffs claim interest only from the

date of the first demand for payment. We have in the past recognized that an award of interest from the date of demand is appropriate. See, e.g., *Powers Regulator Co.* v. *Joseph Rugo, Inc.,* 348 Mass. 233, 236 (1964); *Davidson* v. *Robie,* 345 Mass. 333, 341 (1963); *Bright* v. *American Felt Co.,* 343 Mass. 334, 336 (1961); *Nutting* v. *Kneeland,* 328 Mass. 497, 511 (1952). This is because it is in the nature of some contracts that it is the demand that establishes the time of the breach. See 11 S. Williston, *supra* at 625. See, e.g., *Thomas* v. *Wells,* 140 Mass. 517 (1886). These common law principles have implicitly been recognized by the Legislature. Cf. G. L. c. 231, § 6C.[13] Therefore interest should have been awarded from the date of the demand, which is established in the record. See G. L. c. 231, § 6C.

We disagree with the trial judge's conclusion that "[i]t does not seem appropriate to tax the Commonwealth with interest by virtue of the failure of a town employee to notify plaintiff of her rights [to request a fair hearing] in response to a telephone call." The judge so concluded because in 1966 and 1967 assistance payments were administered by the cities and towns. However, under both Federal and State law in effect at that time the State Department of Public Welfare was ultimately responsible for administering the medical assistance programs. See 42 U.S.C. §§ 1396a(a)(1), (5); Governor's Executive Order 49 (January 31, 1966). Moreover, in 1967 the Legislature abolished all city and town boards of public welfare, effective July 1, 1968. See

---

[13] General Laws c. 231, § 6C, as appearing in St. 1980, c. 322, § 2, provides: "In all actions based on contractual obligation upon a verdict, finding or order for judgment for pecuniary damages, interest shall be added by the clerk of the court to the amount of damages, at the contract rate, if established, or at the rate of ten per cent per annum, from the date of the breach or demand. If the date of the breach or demand is not established, interest shall be added by the clerk of court, at such contractual rate, or at the rate of ten per cent per annum from the date of the commencement of the action." The rate of ten per cent per annum is applicable to causes of action commenced on and after September 17, 1980. The rate of interest applicable to this dispute is provided by § 6C, inserted by St. 1968, c. 763 (six per cent), and as amended by St. 1974, c. 224, § 2 (eight per cent).

St. 1967, c. 658, § 79. The act provided: "All duly existing contracts . . . and obligations of any city or town board . . . shall be performed by the state department of public welfare . . . ." St. 1967, c. 658, § 80. In any event, the failure of the local department to give the plaintiff notice of her right to a fair hearing is not determinative of our conclusion that interest should begin to run from the date of demand.

The commissioner argues that this case does not fall within the general rule allowing interest from the date of demand because the intervener's request for payments for her services was prospective, as well as retrospective, and therefore an unliquidated claim. He argues that the department could not know how much longer the plaintiff would live or how much longer the intervener would provide services. He concludes the intervener's claim was for unliquidated damages because the total payments which the department would ultimately owe were not "susceptible of being made certain in amount by mathematical calculations from factors which are or ought to be in the possession or knowledge of the party to be charged." *Cochrane* v. *Forbes*, 267 Mass. 417, 420 (1929).

The commissioner properly states the test for allowing a claim for interest. However, he applies it incorrectly. Although the plaintiff has sought and received a favorable determination of her continuing eligibility for medical assistance payments, she seeks interest only in so far as the department has failed to provide assistance payments for services already provided. The commissioner apparently concedes that a claim for payment for services already provided is liquidated, and interest for such claims could accrue from the date of demand.

7. *Allocation of partial payments.* The parties dispute how the partial payments made to the plaintiff in 1973, 1976, and 1977,[14] should be allocated toward the principal of the overdue assistance and the interest on that principal. The plaintiff posits that the payments should be applied

---

[14] See note 6.

first to satisfy interest already due, with the remainder of the payment going to reduce the principal debt. The defendant takes the position that the entire payments should be applied to the principal debt.

On this record we need not resolve this question. The parties stipulated below that "[i]f interest is computed as of November 23, 1966, the date of the first demand, it would be $33,164.14. These figures do not include interest on unpaid interest." Therefore, without deciding how partial payments should be allocated in the absence of a stipulation, we conclude that the plaintiffs should be bound by their stipulation. In view of this conclusion, we also need not reach the question whether interest should be computed on the basis of G. L. c. 231, § 6C, or G. L. c. 107, § 3. Finally, the general rule is that, in the absence of an agreement or of equitable considerations to the contrary, a plaintiff may not receive interest on interest. *Shapiro* v. *Bailen*, 293 Mass. 121, 123-124 (1936). *Ellis* v. *Sullivan*, 241 Mass. 60, 64 (1922), and cases cited. Thus, we agree with the trial judge's ruling in accord with this rule.

8. *Conclusion.* The decision of the trial judge is set aside in so far as it fails to award interest for the period between November 23, 1966, and August 3, 1970. A modified judgment shall enter awarding the plaintiffs interest for that period, in accordance with this opinion.

*So ordered.*