King, J.
The named plaintiff, Benjamin Josey, represents a class of approximately 2,253 current and former inmates of the Massachusetts Department of Coixection (DOC) who allege that they were underpaid for work pérformed while employed in the Massachusetts Correctional Industries (Industries).[1] The class claims include breach of contract, quasi-contract, and due process. The class seeks damages, declaratory relief, injunctive relief, attorney’s fees, interest and costs. The defendants are the DOC and Larry E. DuBois, the Commissioner of the DOC. This case comes before the court on cross motions for summary judgment. For the reasons stated herein, the plaintiffs motion for summary judgment is ALLOWED and defendant’s motion for summary judgment is DENIED.
BACKGROUND
The following material facts are not disputed. Plaintiff commenced this suit in June 1995, to recover wages he claims were improperly denied him while employed in the Industries. In December 1995, the case was certified as a class action on behalf of the following class of persons:
All persons who were employed by the Department of Correction (“the DOC”) between April 26, 1991 and October 21, 1994, inclusive (“the Disputed Period”), and who were paid by the DOC for work performed during the Disputed Period in accordance with those rates set forth in the version of 103 CMR 405.07 effective September 18, 1987 through April 25, 1991.
Between April 26, 1991 and October 21, 1994, the DOC employed the members of the plaintiff class to work in Industries. These inmates were promised and expected compensation for their labor.
At all times relevant to this matter, G.L.c. 127, §48A, governed inmates’ compensation and provided, in relevant part, as follows:
Subject to appropriation from the General Fund, the commissioner shall establish a system of compensation for inmates of the correctional institutions of the Commonwealth who perform good and satisfactory work either within the industrial program or in the servicing and maintenance of the correctional institutions or in the prison camps. Upon the recommendation of any superintendent, the commissioner may establish a graduated scale of compensation to be paid inmates in accordance with their skill and industry, and the commissioner shall establish, and may at any time amend or annul, rules and regulations for carrying out the purposes of this section . . .
The version of 103 CMR 405.07 effective from September 18, 1987 through April 25, 1991 provided hourly wages for inmates employed in Industries according to the following scale the (old rates):
Grade A — $1.00 per hour
Grade B — $ .75 per hour
Grade C — $ .50 per hour
Effective April 26,1991, the amended Section 405.07 provided for hourly wages as follows (the new rates):
Grade A — $1.35 per hour
Grade B — $1.25 per hour
Grade C — $1.00 per hour
Grade D — $ .75 per hour
Grade El — $ .50 per hour
Despite the amendment of 103 CMR 405.07, which established the new rates, the defendants paid the plaintiff class at the old rates for work performed during the disputed period. Further, during the disputed period, the DOC had a policy of informing inmates prior .to hiring them that the pay scale was based on the old rates. There is, however, a factual dispute whether all members of the plaintiff class were informed during the disputed period that they would be paid under the old rates. The court concludes that this factual dispute is not material to the legal issues because the court finds that the payments were due to the members of the plaintiff class as a matter of law.
In Carrington v. Massachusetts Correctional Industries, et al., Suffolk Civil Action No. 94-1158-B, and ten consolidated actions (the Carrington decision), the court (King, J.), on May 17, 1995, found that DOC had breached its employment contract with the inmate-plaintiffs by failing to pay them at the new rates for work performed during the disputed period. Judgment then entered for the inmate-plaintiffs. The DOC-filed *288 a notice of appeal from that judgment but subsequently dismissed the appeal with prejudice.[2]
DOC maintains computerized records of all inmates employed in Industries. If the plaintiff class prevails in this action, DOC is readily able to determine the amount each member of the class is entitled to receive.
DISCUSSION
Summary judgment must be granted where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The parties agree that there are no material facts in dispute. Therefore, the court turns to the issues of law.
I.Issue Preclusion
The plaintiff class contends that the defendants are barred by the doctrine of issue preclusion from contesting their breach of contract claim. Specifically, they claim that the defendants should be collaterally estopped from relitigating the issues presented by this suit, as any question about the defendants’ liability to the plaintiff class were resolved in the Carrington decision.
It is a fundamental common law rule that a right, question, or fact distinctly placed in issue and directly decided by a court of competent jurisdiction cannot be disputed in a subsequent suit between the same parties or their privies. This rule is referred to as collateral estoppel or issue preclusion. Montana v. United States, 440 U.S. 147, 153 (1979). For this principle to apply, several factors must be presented:
1. the issue in the prior adjudication must be identical to the issue in the present case;
2. the issue decided must have been a final adjudication on the merits; and,
3. the party against whom the doctrine is asserted must have been a party or in privity with the party to the earlier action.
Massachusetts Property Insurance Underwriting Assoc, v. Norrigton, 395 Mass. 751, 753 (1985).
Each of these factors are present in this case. The doctrine of collateral estoppel, unlike claim preclusion, does not require that a subsequent suit involve the same parties, all that is required are identical issues. As the court wrote in Miles v. Aetna Casualty & Surety Co., 412 Mass. 424, 427 (1992):
. . . the doctrine of collateral estoppel, also known as issue preclusion, does not require mutuality of parties, so long as there is an identity of issues, a finding adverse to the party against whom it [collateral estoppel] is being asserted, and a judgment by a court or tribunal . . .
In Carrington, the court granted summary judgment to similarly situated plaintiffs. The defendants’ appeal in Carrington was dismissed with prejudice. In this action, the defendants seek to relitigate the inmates’ right to recover damages for wages not paid as required by the new rates; a question already decided by this court in favor of plaintiffs with identical claims to those presented in this action. This court is bound by the ruling in Carrington that during the disputed period the plaintiffs were entitled to the new rate of pay. Therefore, the Commonwealth is barred from raising any defenses to the plaintiff class’ breach of contract claim. Nonetheless, since the parties have briefed the defenses raised by the defendants, the court will address the merits of those defenses.
II. Breach of Contract Claim Not Barred by G.L c. 127, §51
The defendants acknowledge that Industries hired the plaintiff class and failed to pay them at the new rates during the disputed period. Nonetheless, the defendants assert that the plaintiff class cannot recover damages on a breach of contract theory because G.L.c. 127, §51 prohibits DOC from entering into contracts for labor with inmates. General Laws c. 127, §51 provides in relevant part:
. . . prisoners in [correctional institutions, jails and houses of correction] shall be employed in said industries under regulations which shall be established by the commissioner; but no contract shall be made for the labor of prisoners.
Defendants contend that the statute’s operative words are, “no contract shall be made for the labor of prisoners.” Consequently, the defendants argue that the inmates cannot prevail under a contract theory to recover unpaid wages because the statute expressly prohibits contracts for the labor of prisoners. That is, the defendants argue that the inmate pay regulation promulgated by DOC is unenforceable because it is in conflict with the statute.
The clear and unequivocal language of G.L.c. 127, §51 authorizes DOC to enter into employment contracts with inmates (“prisoner . . . shall be employed . . .”). The legislative histoiy of the statute shows that the prohibition against contracts for the labor of prisoners refers to the prior practice of hiring out prisoners to work for private companies. The original version of G.L.c. 127, §51, Chapter 447 of the Acts of 1887 (the original statute) took effect on November 1, 1887. The relevant portions of the original statute[3] are found in Sections 1, 16 and 17:
Section 1. No contract shall hereafter be made for the labor of prisoners confined in the state prison, reformatories or any of the houses of correction; but such prisoners shall be employed by the warden, superintendent or master of said prison, reformatoiy or house of correction, under rules and regulations to be established by the general superintendent of prisons, in such industries as shall from time to time be fix:ed upon by said warden, superintendent or master and the general superintendent.
*289 Section 16. Any existing contract for the labor of the prisoners in said prison, reformatory or house of correction, which, by the terms thereof, may be terminated by the warden, superintendent or county commissioners, upon notice, shall be terminated by the warden, superintendent or county commissioners, by giving, within ninety days after the confirmation of said general superintendent, the notice provided for such contract
Section 17. This act shall take effect [November 1, 1887].
Acts of 1887, Chapter 44, Sections 1, 16 and 17.
The intent of the Legislature in enacting the original stat-ute was not to prohibit the Commonwealth from entering into employment contracts with prisoners. Rather, the original statute was intended to end the practice of “farming out” the labor of inmates to private companies, who paid the state for this privilege.
The labor method used primarily in the North[ern prisons] was the contract system, in which convicts remained under state authority but their labor was sold to the highest bidder. . . [T]he contract system . . . [was] used in some form until the early twentieth century, when labor unions pressured both federal and local governments to pass laws restricting prison labor. Only the opposition of free workers to the competition of convict labor unilaterally put an end to prison industries. It was then that prisons turned wholly to the state-use system.[4]
That the Legislative intent behind the enactment of the original statute was to abolish the practice of hiring out prisoners to private companies is confirmed by the Annual Reports of the Commissioners of Prisons of Massachusetts which were submitted to the Legislature during that time.[5] A statement contained in the 1887 Report from the Warden of the State Prison states:
Ten years ago, when all the men were employed upon contract . . . self-interest kept them in their places without trouble on the part of the officers ... After years of agitation of prison labor ... a law has been passed which says that all labor shall be upon State account and by entirely new methods ... I think it would have been much better if the law that goes into effect November 1st [1887] had allowed our contracts to expire by limitation . . . We now have fifty men upon the harness contract upon the piece price plan . . . and about a hundred men employed by the Tucker Manufacturing Company at wages from thirty to fifty cents per day ... I hope the law can be changed so that the contract can expire by limitation, which does not exceed fifteen months.
1887 Report at 12-16.
As required by Section 16 of the original statute, beginning in November, 1887, the contracts that existed at that time were terminated by the prison officials, or terminated by other means. By 1889, the contracts that existed at the time of the enactment of the original statute had all terminated. According to the 1889 Report,
There are practically no receipts for labor... as the contract system has been eliminated from the prison, and all the convicts who are able to work and are not engaged in duties about the prison are employed on the State account plan provided for in the Acts of 1887 and 1888, relating to the labor of prisoners.
1889 Report at 12.
III. Plaintiff Class is Entitled to Maintain this Contract Action
The defendants argue that the Industries wage regulations in question do not authorize a private right of action to inmates in situations such as this. That is, the plaintiffs cannot maintain a contract action because no regulation or statute allows them to sue the defendants. The court disagrees.
The primary cause of action asserted by the plaintiff class is for breach of a contract voluntarily entered into by the Commonwealth. The Commonwealth obligated itself to pay a certain rate for the labor provided by the inmates, and, during the disputed period, failed to pay that rate. The defendants cite no relevant case or statute supporting their proposition that the plaintiffs cannot maintain this breach of contract suit. The defendants’ argument that the plaintiffs may not maintain a contract action against the Commonwealth is contrary to existing caselaw. See J.A. Sullivan Corp. v. Commonwealth, 397 Mass. 789, 793 (1986) (The state “consents to jurisdiction by voluntarily entering into a contract”). Campbell Hardware, Inc. v. R.W. Granger & Sons, 401 Mass. 278 (1987); R.Zoppo Co. v. Commonwealth, 353 Mass. 401, 404 (1967); Murdock Parlor Grate Co. v. Commonwealth, 152 Mass. 28, 30 (1890). On the undisputed facts, the court rules that the plaintiff class is entitled to recover damages for breach of contract.
IV. Plaintiff Class is Entitled to Recover Interest
The defendants, relying on Town of Milton v. Commonwealth, 416 Mass. 471 (1993), argue that the plaintiff class is not entitled to recover interest because there is no “clear intention of the Legislature” to create a contract, or to pay interest on any claim under a labor agreement with the plaintiff class. However, in a contract action, interest is allowed against the Commonwealth in the same manner and to the same extent that it would be allowed against a private person. Sargeant v. Commissioner of Public Welfare, 383 Mass. 808, 814 (1981).
In Sargeant, the Commonwealth refused to pay a vendor of health services and then claimed that no interest was due based on the lack of express statutory authority. Id. at 809-12. In rejecting the Commonwealth’s position that no interest was due, *290 the court found that where a vendor sues the state for breach of contract, the vendor is entitled to recover interest. Id. at 813-14.[6] Similarly, the plaintiff class in this action is entitled to recover interest since their claim is for breach of contract.
ORDER
1. Plaintiffs motion for summary judgment is allowed and defendants’ motion for summary judgment is denied.
2. Within thirty (30) days of the date of this order plaintiffs counsel shall file a motion for attorneys fees (to be paid out of the class recovery) accompanied by a supporting affidavit. Said motion shall be filed in conformity with Superior Court Rule 9A.
3. Within thirty days defendants shall file a statement showing the amount of back wages, past interest and per diem future interest, each member of plaintiff class is entitled to recover.
4. A further hearing on an award of attorneys fees and an assessment of damages will be held on February 19, 1997 at 2:30PM in courtroom 243.

The size of the class was quoted by DOC during the summary judgment hearing as 2,253. This includes 1,026 inmates still in custody, 19 inmates who are deceased, 850 inmates who have received certificates of discharge, 234 inmates who have been paroled and 3 inmates who have escaped.

The arguments asserted by the defendants in support of their pending summary judgment motion were not raised in the Carrington case.

Attached as Exhibit 1 to the Affidavit of Edward B. Gaffney.

Sullivan, Larry E., The Prison Reform Movement, at page 13, Twayne Publishers, Boston, 1990.

Excerpts of the annual reports of the years 1883, 1887 and 1889 are attached respectively as Exhibits 2-4 to the Gaffney Affidavit.

Specifically, the Sargeant court distinguished the holding of Broadhurst v. Division of Employment, 373 Mass. 720 (1977), where interest was denied under the Employment Security Law, G.L.c. 151A, because the statute that conferred the right of action was detailed as to process and remedies, but was silent on interest. For the same reason, Sargeant is distinguishable from Milton v. Commonwealth, 416 Mass. 471, dealing with G.L.c. 41, §108L.