Brassard, Raymond J., J.
The plaintiff Michael J. Shea (“Shea”), an inmate at MCI-Norfolk, brought this complaint against defendants Luis S. Spencer, Commissioner of the Massachusetts Department of Correction (“DOC”), and James F. Karr, Director of the DOC’s Correctional Industries Division (collectively, the “Defendants”), pursuant to G.L.c. 127, §38H and G.L.c. 30A, §14 challenging the denial of his institutional grievance requesting that he be paid minimum hourly wages for work that he was directed to perform for a private company. The matter is before the court *565 on the Defendants’ motion to dismiss pursuant to Mass.R.Civ.P. 12(b)(6). For the reasons stated below, the Defendants’ motion is ALLOWED.
BACKGROUND
Shea, while working at his assigned institutional job within the Correctional Industries’ Binder Shop, was directed by his supervisors to manufacture twelve thousand flip-up type vinyl notebooks for a private company in Dedham. After he completed his task, Shea was informed that he would not be receiving any additional compensation other than his normal wages despite the fact that he had performed labor for a private company.
Shea filed an institutional grievance (no. 65639) seeking compensation in the amount of $736.00 for the ninety-two hours of work he performed. Shea calculated the amount of compensation he was owed based on the prevailing minimum wage. The grievance also requested that Correctional Industries stop using inmate labor to manufacture products for private companies. On May 8, 2013, Institutional Grievance Coordinator (“IGC”) Stephan T. Gatewood denied Shea’s grievance. The denial stated, in part:
Please be advised that in accordance with 103 CMR 455.10 Inmate Compensation (#1) — MassCor has established a graduated scale of compensation to be paid inmates in accordance with their skill and industry.
Shea timely appealed the denial of his grievance, in which he argued that the DOC is prohibited from manufacturing products for private companies using inmate labor, especially where the private company makes the products available for sale to the public. On June 28, 2013, Superintendent Gary Roden denied the appeal, writing: “Be advised that I concur with the IGC’s decision; your request for additional compensation is denied.”
Shea timely filed the current complaint in the Superior Court pursuant to G.L.c. 30A, §14, seeking for the court to set aside the Defendants’ decision, and modify the decision to award Shea $736.00, plus costs. Further, Shea is seeking for the court “to enter a cease and desist order to preclude Massachusetts Correctional Industries . . . from using prison inmate labor to produce products for sale to anyone other than the offices, departments or institutions of the Commonwealth and of the several Counties, Cities and Towns, absent specific authorization of the state legislature to use inmate prison labor for sale to the public.”
DISCUSSION
To survive a motion to dismiss pursuant to Mass.R.Civ.P. 12(b)(6), a complaint must set forth the grounds of the plaintiffs entitlement to relief with more than mere “labels and conclusions.” Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The factual allegations in the complaint do not need to be detailed, but they “must be enough to raise a right to relief above the speculative level . . . [based] on the assumption that all the allegations in the complaint are true ...” Id. At the pleading stage, Rule 12(b)(6) requires factual “ ‘allegations plausibly suggesting (not merely consistent with)’ an entitlement to relief.” Id., quoting Twombly, 550 U.S. at 557.
Pursuant to G.L.c. 30A, § 14(7),[2] acourt may affirm, reverse, remand, or modify an agency decision if “the substantial rights of any party may have been prejudiced” because the agency decision was based on an error of law, on an unlawful procedure, was arbitrary and capricious, was unwarranted by facts found by the agency, or was unsupported by substantial evidence. G.L.c. 30A, §14(7). In reviewing the agency’s decision, the court must give “due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it.” Id. The court may not substitute its judgment for that of the agency, and “must apply all rational presumptions in favor of the validity of the administrative action ...” Consolidated Cigar Corp. v. Department of Pub. Health, 372 Mass. 844, 855 (1977).
Shea argues that the Defendants erroneously denied his grievance. He contends that in instances where the DOC uses inmate labor to produce goods for private companies, the DOC is required to pay the inmates the prevailing minimum wage for their labor. Further, Shea maintains that it is a violation of Massachusetts law for the DOC to contract with private companies for inmate labor.
Here, the Defendants did not err in determining that Shea was not entitled to receive the prevailing minimum wage for work he performed in his Correctional Industries position. General Laws c. 127, §48A states, in pertinent part:
Subject to appropriation from the General Fund, the commissioner shall establish a system of compensation for inmates of the correctional institutions of the commonwealth who perform good and satisfactory work either within the industrial program or in the servicing and maintenance of the correctional institutions or in the prison camps. Upon the recommendation of any superintendent, the commissioner may establish a graduated scale of compensation to be paid inmates in accordance with their skill and industry, and the commissioner shall establish, and may at any time amend or annul, rules and regulations for carrying out the purposes of this section.
(emphasis added). In accordance with Section 48A, the Commissioner of Correction has promulgated regulations establishing a system of compensation for inmates. See 103 Code Mass. Regs. §455.10 (2013). The regulations provide that “[hjourly wages for inmates shall be determined by the percentage of the work *566 force and degree of skill observed by and demonstrated to the Shop Instructor or Shop Manager who reports directly to the Industries Supervisor.” Id, §455.10(2); see also §405.08 (inmate wages and stipends). Thus, “Massachusetts has, by statute and administrative regulation, established a compensation system that pays inmates less than the minimum wage for work they do for the Prison Industries Program or in the servicing and maintenance of the correctional institutions in which they are held.” Miller v. Dukakis, 961 F.2d 7, 9 (1st Cir. 1992). Moreover, “courts have uniformly denied [Fair Labor Standards Act] and state minimum wage law coverage to convicts who work for the prisons in which they are inmates.” Id. at 8.
Shea’s argument that Massachusetts law prohibits the DOC from contracting with private companies for inmate labor is more compelling. General Laws c. 127, §51 states, in pertinent part: ‘The commissioner . . . shall determine the industries to be established and maintained in the respective institutions . . . [and] [t]he prisoners in said institutions shall be employed in said industries under regulations which shall be established by the commissioner; but no contract shall be made for the labor of prisoners.” (Emphasis added.) Further, G.L.c. 127, §53 provides, “[t]he commissioner shall, so far as possible, cause such articles and materials as are used in the offices, departments or institutions of the commonwealth and of the several counties, cities and towns to be produced by the labor of prisoners in the institutions named in section fifty-one.” (Emphasis added.)
Massachusetts law does not expressly allow the DOC to enter into contracts with private companies for the production of items using inmate labor, or for inmate-produced goods to be sold to the public. Cf. Ariz.Rev.Stat.Ann. §41-1622 (‘The industries or enterprises shall be conducted for the employment of prisoners for the purposes of manufacturing or producing such articles or products . . . for sale to the public”). Further, Section 51 provides that “no contract shall be made for the labor of prisoners.” G.L.c. 127, §51. It is likely that the Legislature enacted this prohibition to “abolish the practice of hiring out prisoners to private companies” to promote free labor interests. See Josey v. DuBois, 1996 Mass.Super. LEXIS 77 at *8-*13 (Mass.Super. December 30, 1996) (King, J.) [6 Mass. L. Rptr. 287] (determining that Section 51 “was intended to end the practice of ‘farming out’ the labor of inmates to private companies” by analyzing the legislative history, the original version of the statute found at Chapter 447 of the Acts of 1887, and the Annual Reports of the Commissioners of Prisons of Massachusetts).
Assuming arguendo that it is a violation of Massachusetts law for the DOC to contract with a private company for inmate labor, Shea is still not entitled to receive the minimum wage for his work. As discussed above, the statutory and regulatory scheme allows the Commissioner of Correction to determine inmate wages. There is nothing to indicate that the prohibition against contracting for inmate labor was meant to protect or benefit inmate workers.[3] See id. at *11, quoting Larry E. Sullivan, The Prison Reform Movement 13 (Twayne Publishers 1990) (‘The contract system [for inmate labor] . . . [was] used in some form until the early twentieth century, when labor unions pressured both federal and local governments to pass laws restricting prison labor. Only the opposition of free workers to the competition of convict labor unilaterally put an end to prison industries. It was then that prisons turned wholly to the state-use system.”); see also Burlington v. Bedford, 417 Mass. 161, 164 (1994) (“A party has standing when it can allege any injury within the area of concern of the statute or regulatory scheme under which the injurious action has occurred").
Insofar as Shea is challenging the DOC’s alleged practice of contracting with private companies for inmate labor, and is seeking an injunction to prohibit the practice, such a claim is not appropriately brought pursuant to G.L.c. 127, §38H and G.L.c. 30A, §14. See, e.g., Grady, 83 Mass.App.Ct. at 135 (“[A] complaint for declaratory relief is an appropriate way of testing the validity of regulations or the propriety of practices involving violations of rights, which are consistent and repeated in nature”). In any event, Shea fails to allege that the DOC’s practice constitutes a constitutional violation, that he suffered a legal harm as a result of the practice, or that he has standing to challenge the DOC’s practice. Cf. G.L.c. 231 A, §2 (declaratory judgment request must establish that the agency’s “practices or procedures are ... in violation of the Constitution of the United States or of the constitution or laws of the commonwealth, or are in violation of rules or regulations promulgated under the authority of such laws, which violation has been consistently repeated”); Gintherv. Commissioner of Ins., 427 Mass. 319, 322 (1998); Loffiedo v. Center for Addictive Behaviors, 426 Mass. 541, 543 (1998) (generally “a clear legislative intent is necessary to infer a private cause of action from a statute”).
ORDER
For the foregoing reasons, the Defendants’ motion to dismiss is ALLOWED.

General Laws c. 127, §38H states:
A final decision with respect to a grievance shall be subject to judicial review in accordance with section 14 of chapter 30A, in the superior court for the county in which the inmate is incarcerated or otherwise being held, or in Suffolk county. A complaint filed with the court by an inmate in accordance with this section shall be accompanied by a copy of the final decision for which review is sought, if any, and a complaint not so accompanied subject to the exclusion in section 38F shall not be accepted for filing. The availability of review under this section shall not be construed to limit any judicial remedies otherwise available.
*567 (emphasis added). Thus, G.L.c. 127, §38H, and thereby G.L.c. 30A, §14, was the appropriate vehicle for Shea to challenge the denial of his grievance. See Grady v. Commissioner of Com, 83 Mass.App.Ct. 126, 130, 132 (2013) (clarifying that “while the Legislature originally exempted the DOC from G.L.c. 30A, the Legislature later tempered this exception when it enacted c. 127, §38H. The Legislature then provided for judicial review of final decisions of inmate grievances in accordance with the process set forth in G.L.c. 30A, §14”).

In support of his argument that the DOC cannot sell inmate-produced goods to the public, Shea cites to the As-hurst-Sumners Act, which prohibits the transportation “in interstate commerce . . . any goods, wares, or merchandise manufactured, produced, or mined, wholly or in part by convicts or prisoners.” See 18 U.S.C. §1761(a). The Act does “not apply to goods, wares, or merchandise manufactured, produced, or mined by convicts or prisoners who ... in connection with such work, received wages at a rate which is not less than that paid for work of a similar nature in the locality in which the work was performed.” Id. §1761(c)(2). Federal courts have found, however, that the purpose of the Act is to protect private businesses, not inmate workers. See, e.g., McMaster v. Minnesota, 30 F.3d 976, 981 (8th Cir. 1994). As such, federal courts have declined to find that the Act creates a private cause of action for inmate workers. See id.